[Nos. 381-1; 840-1. Division One—Panel 1. April 19, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. JIMMY OTIS LANE, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. CLAUDELL ED- WARDS, *Appellant.*

*Larry L. Barokas,* for appellant Lane (appointed counsel for appeal).

*Edwin S. Stone,* for appellant Edwards (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Gerald M. Lorentson, Deputy,* for respondent.

UTTER, J.—Claudell Edwards and Jimmy Otis Lane were charged with two counts of robbery and one count of rape and convicted on each of the three counts. Both defendants appeal their convictions. They had been previously charged with robbery, assault, and rape but that jury was unable to agree upon a verdict.

Lane and Edwards challenge the court's failure to give the jury certain instructions relating to eyewitness identification and its failure to declare a mistrial following an alleged improper comment of the prosecution in rebuttal argument. Edwards challenges the sufficiency of the evidence for his convictions and urges improper lineup and photographic procedures were used to identify him on the second count of robbery. Lane challenges the lineup and photographic procedures used to identify him in the first count of robbery and urges the court erred in its ruling admitting alleged hearsay testimony in commenting on the evidence and in unduly limiting cross-examination. We find the assignments without merit.

On Sunday, April 20, 1969, both Lane and Edwards allegedly entered a cardroom in downtown Seattle with two other accomplices. They ordered everyone to give them money and a woman, who worked on the premises, testified she was taken to a secluded portion of the premises and raped by both Lane and Edwards.

On April 27, Denny's Restaurant on Aurora Avenue was allegedly robbed by Lane and Edwards, who were later identified by two eyewitnesses to the robbery.

An assignment of error common to both appeals is the court's failure to give the jury instructions proposed by the defendants which expanded the concepts necessary for

adequate eyewitness identification.[1] It is urged by appellants that these instructions would have allowed them to argue their theory of the case involving reasonable doubt, the certainty of identification, and factors to be considered in evaluating the credibility of the testimony of eyewitnesses. A defendant should be entitled to argue his theory of the case based upon instructions given by the court; however, he is not entitled to put his argument in the court's instructions. *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968); *State v. Hayes,* 3 Wn. App. 544, 475 P.2d 885 (1970). In determining whether the instructions furnish a framework from which a party's theory of the case may be argued, the instructions are to be read and understood as a whole. *State v. Jamerson,* 74 Wn.2d 146, 443 P.2d 654 (1968); *State v. Jackson,* 1 Wn. App. 90, 459 P.2d 414 (1969).

The court instructed the jury they were entitled to consider, among other things, the reasonableness or unreasonableness of the story the witnesses related and any fact or circumstance which appealed to their judgment as in anywise affecting the credibility of such witness. These instructions, combined with the court's instructions requiring the jury to find the appellants were present when each crime was committed, gave counsel for both Lane and Edwards the latitude to argue the specific theories they urged in their proposed instructions.

---

[1]The proposed instructions were: "Proposed Instruction No. 1: If the jury finds that the witness was honestly mistaken in his identification of the defendant, then a reasonable doubt is created as to the guilt of the defendant and he must be acquitted.

"Proposed Instruction No. 5: Evidence of identification of the defendant in the absence of prior familiarity with him is merely the expression of an opinion by a witness and is to be regarded by the jury in the same way as any other opinion that may be expressed by a witness.

"Proposed Instruction No. 6: The possibility of human error or mistake and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must carefully consider these factors passing upon the credibility that you attach to the witnesses' testimony and you must be satisfied beyond a reasonable doubt as to the accuracy of the witnesses' identification of defendant."

■ Another common claim of error relates to a comment by the prosecuting attorney during closing argument. He stated, "You can also be sure if any of the witnesses in identification had positively stated that these people were not the ones that the defense would have had them in with their own subpoenas which they have a right to do." They contend that inasmuch as no discovery was allowed in the case, there was no way either of the appellants could have known which witnesses did or did not identify them. The request to instruct that appellants did not have knowledge of who was present in the cardroom during the robbery was refused. The rebuttal argument of the prosecutor did not exceed those points raised in the closing argument by appellants' counsel. The argument was made by both Lane and Edwards that the prosecutor tried either intentionally or inadvertently to keep evidence from the jury. There is no showing that any motion for discovery was made following the first trial, and in the first trial appellants both had an ample opportunity to develop leads which could have produced additional witnesses. The scope of closing argument is a matter for the exercise of discretion by the trial court and improper argument by counsel in response to that of another may not be assigned as error. *Cranford v. O'Shea*, 75 Wash. 33, 134 P. 486 (1913).

Lane complains of the prelineup procedures used to identify him in the cardroom robbery and the Denny's Restaurant robbery. Edwards complains of the prelineup procedures used to identify him in the restaurant robbery.

■ The problem posed for the courts is to find the acceptable balance between an ideal photographic identification technique on one hand and an impermissibly suggestive one on the other. Elements of an ideal technique involve presentation of a series of photographs whose arrangement and display in no way suggest which of the pictures is that of the suspect and with sufficient number of different pictures to make a fair test of the witness' ability to make identification. The photographic identification should only be used if the defendant is not available for

actual viewing in a properly conducted lineup. If more than one witness is to make identification of the pictures, they should not be allowed to view the pictures in each other's presence. P. Wall, Eye-Witness Identification in Criminal Cases 66-85 (1965).

The validity of the identification procedure is a question of fact for the jury's determination and appellate courts may reverse a determination of the identification issue adverse to the defendant only where the facts establish "[t]he photographic identification procedure . . . [is] so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Gefeller*, 76 Wn.2d 449, 458 P.2d 17 (1969). To suggest is "to put . . . into the mind:" or "to seek to influence the mind . . ." Merriam-Webster Third New Int'l Dictionary (1969).

*Simmons* recognized the inherent hazards of misidentification where photographs are used, but concluded cross-examination exposed the weakness in the process and lessened the danger of convictions based upon misidentification. The court noted circumstances vary so much that each case must be examined on its own facts.

Although the procedures used by the police in this case cannot be said, from the state of the record, to have affirmatively followed all the elements of an ideal technique, they nonetheless appear to strike an acceptable balance between ideal technique on one hand and impermissibly suggestive procedures on the other.

All the witnesses were shown a series of pictures. In some cases, potential witnesses were shown over 100 pictures. Some of the witnesses who identified Lane from his picture as a participant in the cardroom robbery, did so at a time when he was not in custody. Whether Lane was in custody at the time other witnesses initially identified him from his pictures is not clear. The statement of facts also fails to show with clarity whether some of the witnesses who identified Lane's picture did so when other witnesses were present, in

a manner that would indicate what their choice had been. It likewise does not reveal whether these witnesses were able to see previous witnesses' initials on photographs they had identified. No witness testified he was influenced by the action of any previous witnesses and there is nothing in the record to compel such an inference.

In the lineups following the initially tentative identification of Lane, he was with a group of men of the same race and roughly the same height and physical characteristics. Counsel for both Lane and Edwards were present at the lineups and no challenge is made to the lineup procedures.

Edwards asserts his identification by John Stickle, an employee of Denny's Restaurant, was influenced by similar identification made by a co-worker of his. The testimony of these two witnesses indicates their identification of Edwards in the lineup was made independently and while they were physically separated from each other. The record is unclear whether they viewed groups of separate pictures in which Edwards was identified before or after the lineup. It is further unclear whether they identified the photo of Edwards in each other's presence. If Edwards' photographic identification was conducted after the lineup, there can be no claim it influenced the lineup identification. If, on the other hand, it was conducted prior to the lineup, the picture of Edwards was contained in a group of pictures shown serially to the two witnesses, and there is no showing that the selection of Edwards by one witness influenced his identification by the other witness.

We do not find a substantial likelihood of irreparable misidentification as shown from the photographic identification procedures used. Lane was identified by numerous witnesses, who viewed the series of photographs at different times, as a participant in the cardroom robbery and rape and in the restaurant robbery. A witness who did not participate in any prelineup photographic identification observed Lane in a lineup and identified him at that time, as well as later at the trial. The victim of the rape which

occurred in the cardroom was able to identify both Lane and Edwards.

After a jury has resolved the facts, possible inferences of opportunities for misidentification do not amount to a substantial likelihood of irreparable misidentification.

Edwards' remaining assignment of error has challenged the sufficiency of the evidence for conviction and the court's denial of a motion for new trial. The identification of Edwards as a participant in the cardroom robbery was not as strong as that of his codefendant Lane. He was, however, positively identified by witnesses as a participant in both robberies, and this constitutes substantial evidence upon which reasonable minds might differ and which, in turn, presents a question for the jury. *State v. Reynolds,* 51 Wn.2d 830, 322 P.2d 356 (1958); and *State v. Hunter,* 3 Wn. App. 552, 475 P.2d 892 (1970).

A police officer testified he had seen both defendants together the day prior to the cardroom robbery. He further testified when he was working at the cardroom, he was not a member of the Seattle Police Department and saw defendants' pictures through a close friend in the police department who was on homicide and robbery detail. When questioned about the name of his friend and his color, objections were sustained on the ground of lack of materiality. Lane objects, complaining this hampered his cross-examination of the circumstances under which the photographs were shown and his ability to test the testimony of the viewer. Ordinarily, the matter of relevancy is a determination within the discretion of the trial judge. *State v. Schrager,* 74 Wn.2d 75, 442 P.2d 1004 (1968). We find no abuse of discretion here. The name and color of the police officer showing the photographs were not essential to the pursuit of a line of inquiry by defendant Lane, and the court did not, by its ruling, limit Lane from inquiring into other circumstances regarding the showing of the photographs.

A witness for the state testified on redirect examination that when he identified a particular photo in the lineup photographic identification, he told the officers showing him

the photograph, ".I would like to see that particular individual." This answer was objected to as hearsay and was overruled by the court.

 Hearsay evidence is testimony in court, or written evidence, of a statement made out of court. Such statement is offered as an assertion to show the. truth of matters asserted therein, and thus rests, for its value, upon the credibility of the out-of-court asserter. C. McCormick, Evidence § 225 (1954); *Moen v. Chestnut,* 9 Wn.2d 93, 113 P.2d 1030 (1941). The statement. objected to was not hearsay, as it was not offered to show the truth of the matters asserted therein and did not depend upon the credibility of the out-of-court asserter for its value.

 Counsel next contends the judge commented on the evidence when, during the colloquy between the judge and the prosecuting attorney regarding the admissibility of a statement in evidence, the judge said to the prosecution, "As a matter of fact, it [the statement] has probably been made admissible now." Lane contends this violated article 4, section 16 of the Washington State Constitution which prohibits a comment on the evidence by the trial court.

It was established at one time that remarks by the court, addressed entirely to attorneys in ruling upon questions presented during the progress of the trial, are not comments on the evidence prohibited by the constitution. *Heitfeld v. Benevolent & Protective Order of Keglers,* 36 Wn.2d 685, 220 P.2d 655, 18 A.L.R.2d 983 (1950). There is some question whether *Heitfeld* was overruled by *State v. Lampshire,* 74 Wn.2d 888, 447 P.2d 727 (1968). There, the court held a comment by the trial court directed to counsel in ruling on the evidence violated the constitution unless it could affirmatively appear from the record that no prejudice could have resulted from the court's comment. The majority opinion was signed, however, by five judges, one of whom concurred only in the result. A strong dissent signed by four judges contended the rule in the *Heitfeld* case should still be the ·law of this state. This dispute has apparently been resolved by a unanimous holding of the court in *State v. Cerny,*

78 Wn.2d 845, 855, 480 P.2d 199 (1971), where it was noted, "A trial court, in passing upon objections to testimony, has the right to give its reasons therefor and the same will not be treated as a comment on the evidence." The comment objected to by Lane was made solely to counsel in the course of ruling upon the evidence and therefore does not violate our constitutional prohibition against commenting on the evidence.

The judgments of conviction of Lane and Edwards are affirmed on all counts.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied June 8, 1971.

Review denied by Supreme Court July 23, 1971.