[No. 691-40370-1.    Division One—Panel 1.    June 28, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT TAYLOR THACH, *Appellant*.

*Phil Mahoney,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Christopher J. Bell, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant, after jury trial, was convicted of the crime of grand larceny by embezzlement. He appeals, making 14 assignments of error.

Defendant was employed at Vic Green's Gas and Tire Mart, a service station in Seattle, from October 1967 to January 8, 1968. Defendant was on duty on the date last mentioned. At 11 p.m., or shortly thereafter, he reported a robbery of the station. He was later charged with involvement in the crime so reported and was convicted on the charge.

The evidence showed that he and a friend, James R. Dillon, Jr., in a conversation on January 8, 1968 regarding a scheme for raising money, agreed between them that Dillon would steal and later abandon a car. He would then proceed to the service station at which defendant was employed, provide him with the description of the stolen car and its license plate number, and in turn defendant would

deliver to Dillon the service station receipts. Defendant would then report a robbery at the station and identify the vehicle used by the purported robbers according to the information provided by Dillon.

At 11:15 p.m. on January 8, 1968, Dillon left the tavern that he was in and started to drive to the service station. Instead of stealing a car as planned, he stopped at a side street, noted a parked pink station wagon, and then wrote down its license number, make and model. At approximately 11:30 p.m., he arrived at the service station and gave the defendant a slip of paper containing the information he had written down concerning the station wagon. Defendant then turned over to Dillon a bag containing the station receipts consisting of about $445 in cash and checks. Dillon took the bag to his apartment and then left with the checks. After he left the apartment, he threw away the checks. Later Dillon, repenting, turned the money over to the station owner, but the checks, although searched for, were never found.

Defendant's principal contention is that the court erred in giving the so-called pride of opinion instruction. The case went to the jury at 10:34 a.m. Later in the afternoon the jury had not yet reached a verdict. The court informed both counsel that he would make inquiry of the jury concerning whether they were having difficulty reaching a verdict and

> if they are having difficulty, ask them if they made any progress in the last hour; and if they haven't made any progress, I am going to ask them how they stood on the last ballot, without indicating which way.

Defendant raised no objection to this part of the procedure. The court then continued

> And then if it appears that an additional instruction would be helpful, I will give them the pride of opinion instruction.

Defendant's counsel stated he would except to the giving of such an instruction. The jurors were then brought in and in response to questions from the court informed him that the

ballot had not been changed in the last hour or since noon, and that the jury stood 10 to 2, without indicating which way. The foreman further stated that in their deliberations there had been a different numerical standing. The court then gave the following instruction:

It is very desirable that you reach a verdict in this case. The law requires that your conclusions shall be unanimous. It is not required that any one of you should surrender his or her individual freedom of judgment, but it is well that each of you should have in mind that your true verdict cannot ordinarily be reached except by mutual consideration and discussion of all the different views that may suggest themselves to any of your number. The jury room is no place for pride of opinion. A verdict which is the result of real harmony, or that growing out of open-minded discussion between jurors, and a willingness to be convinced, with a proper regard for the opinions of others, and with a reasonable distrust of individual views not shared by their fellows, is a fair yielding of one reason to a stronger one. Such, having in mind the great desirability of unanimity, is not open to criticism. The law contemplates that jurors shall, by their discussions, harmonize their views, if possible, but not that they shall compromise with their consciences and yield for the mere purpose of agreement.

Defendant's counsel then objected to the giving of the instruction because it is one "that suggests they should get together, I think is wrong and I want to renew my exception to it."

The decisions on the subject of the propriety of giving the pride of opinion instruction are divided. Annot., 100 A.L.R.2d 177 (1965). However, in this state a pride of opinion instruction has long been held proper. In *State v. Parker,* 79 Wn.2d 326, 485 P.2d 60 (1971), our Supreme Court examined the earlier cases on the subject and reaffirmed the propriety of giving a pride of opinion instruction. That case involved a charge of armed robbery. After the case was submitted to the jury and considered by them for nearly 4 hours, the court gave an instruction virtually identical to that in the instant case. In affirming the judgment, the court said:

Accordingly, if in a criminal case the court's charge to the jury makes clear that the accused is entitled to the individual verdict of each juror, that the verdict must be unanimous, that no juror need surrender his convictions, *that the court cannot and has not intended to comment upon the evidence, nor weigh the evidence or the credibility of the witnesses,* and that the jury cannot return a verdict of guilty unless the defendant's guilt has been established to its satisfaction beyond a reasonable doubt, and the presumption of innocence overcome, it is discretionary with the trial court whether the jury shall be instructed that each juror should give careful consideration to the views of his fellow jurors, and if possible without yielding his conscience, harmonize his views with those of the other jurors, that they shall, if possible, reach a verdict if they can conscientiously do so without compromising their convictions.

(Italics ours.)

■ The instructions in the instant case, including the pride of opinion instruction, fully met the requirements set forth above in the excerpt from *State v. Parker, supra,* with the exception that, contrary to the suggestion contained in the italicized language, no instruction was given concerning the trial court's inability to comment on the evidence. Defendant's objection to the giving of the pride of opinion instruction in the instant case was not predicated upon the ground that the court's instructions failed to include the rule italicized; nor did defendant request an instruction to embody such rule. At the time the defendant took his exceptions, the opinion in *State v. Parker, supra,* had not been filed, and in the absence of some indication to the contrary, we must assume that it is to operate retroactively. *See Tully v. State,* 4 Wn. App. 720, 723 n.2, 483 P.2d 1268 (1971). We need not decide whether a proper exception and request for an instruction is necessary to preserve the right to review a claimed error when a subsequent appellate decision retroactively changes the applicable rule of law. *See,* however, *Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1969).

■ We rest our decision on the ground that if error

was committed it was not prejudicial. A reading of the record, including instructions given, makes it plain that no question of possible comment by the court had arisen during the course of trial; the court carefully protected the defendant's rights at all stages of the proceedings, and by its instructions carefully informed the jury concerning the presumption of innocence, the state's burden of proving the defendant's guilt beyond a reasonable doubt, and the necessity of the jury being persuaded by the evidence in the case. Moreover, the fact that defendant failed to propose, or object to the absence of, a cautionary instruction indicates that he did not think that the absence of such an instruction would cause prejudice. We think that the failure to give the instruction was not reversible error. *See State v. Beard,* 74 Wn.2d 335, 444 P.2d 651 (1968); *Owens v. Anderson,* 58 Wn.2d 448, 364 P.2d 14 (1961); *State v. Morgan,* 3 Wn. App. 470, 475 P.2d 923 (1970).

■■ Defendant next contends that RCW 5.60.050[1] requires that Dillon's testimony should have been stricken and defendant's motion to dismiss, interposed at the conclusion of the state's case in chief, accordingly granted. Defendant made no motion below to strike the testimony either on the ground now argued or otherwise, and did not indicate the basis for his motion to dismiss. On appeal defendant argues that Dillon's testimony should have been stricken because defendant's counsel brought out on Dillon's cross-examination that the latter had been in a mental institution about 18 months before he testified; that he had taken various drugs from 3 to 5 months before trial; and that while testifying he had certain tranquilizer pills in his possession. Assuming that the contention is reviewable at all because of failure to present his motion to strike the testimony below, we find no merit in the contention advanced. RCW 5.60.050 provides that "those . . . of unsound mind, or intoxicated at the time of . . . examina-

---

[1]"The following persons shall not be competent to testify:

(1) Those who are of unsound mind, or intoxicated at the time of their production for examination, . . ."

tion" are incompetent to testify. The statute, however, refers to those "who are without comprehension at all, not to those whose comprehension is merely limited." *State v. Hardung,* 161 Wash. 379, 297 P. 167 (1931). There is no evidence Mr. Dillon when testifying was under the influence of drugs or did not understand the nature of an oath, or was incapable of giving a correct account of what he had seen and heard. *McCutcheon v. Brownfield,* 2 Wn. App. 348, 467 P.2d 868 (1970); *State v. Moorison,* 43 Wn.2d 23, 259 P.2d 1105 (1953). Defendant was entitled to and received the benefit of an instruction on the bearing of drugs on the issue of Mr. Dillon's credibility. Instruction 4 informed the jury that they might "consider evidence relating to the use of narcotics or drugs in determining the credibility of a witness." Defendant acquiesced in the court's suggestion that the matter be handled by instruction. We can find no error in the court's denial of defendant's motion. Furthermore, when defendant did not elect to stand on his motion to dismiss at the end of the state's case, he waived his right to claim error because of its denial. *State v. Wilson,* 74 Wn.2d 243, 444 P.2d 141 (1968); *State v. Thomas,* 52 Wn.2d 255, 324 P.2d 821 (1958).

Defendant next contends that the court erred in denying defendant's motion for mistrial made during the cross-examination of the defendant. Defendant was asked whether he told Detective Lee that he did not know Dillon at all. Defendant denied making such a statement. Defendant, without stating any grounds, then moved for a mistrial; and upon denial of this motion, he moved to strike the question and answer, again without stating his grounds. The court denied each motion. After defendant rested, the state called Detective Lee to testify that the defendant in a written statement had stated that he did not know Dillon at all. The court refused to permit his testimony, stating that it was done "out of an abundance of caution" and that it was "a rather collateral matter." Defendant relies on this last mentioned ruling as supporting his motion for mistrial earlier made during defendant's cross-examination. We find

no relationship between the two. Furthermore, the defendant's denial given on cross-examination is undisputed, so that we can find no prejudice. We find no error here.

■ Defendant finally contends that the court erred in overruling defendant's objection to claimed improper argument by the deputy prosecuting attorney as to matters not in evidence. He particularly is critical of a statement of the deputy prosecutor that the police did not have in their possession an envelope flap, referred to in the testimony as containing the license number and description of the alleged robber's car, and that they had looked hard for it. We have read the arguments of counsel and agree with the trial court that the matters objected to, in light of the evidence in the case showing the defendant's guilt, were not prejudicial. We agree that statements in final argument must be supported by the record, either directly or by reasonable inference from the evidence in the case, unless in reply to or in retaliation for unsupported statements in the argument of defendant's counsel. *State v. La Porte*, 58 Wn.2d 816, 365 P.2d 24 (1961). In the instant case, however, the court instructed the jury that they were required to render a verdict "upon the evidence given in the trial," and on another occasion following exception to argument by the deputy prosecuting attorney, the court instructed the jury that:

> when a dispute arises as to what the testimony shows on some point, you must refer in your own mind back to the testimony and if any attorney makes any statement which in your opinion is not in accordance with the testimony, you disregard that statement.

The deputy prosecuting attorney himself, both in his opening and rebuttal argument, cautioned the jury that what he said should not be considered as evidence. We cannot hold that the trial court abused his discretion in holding that no prejudicial error was committed in light of the instructions and the nature of the arguments involved. *See State v. Lane*, 4 Wn. App. 745, 484 P.2d 432 (1971); *State v. Co-*

202

*lombo,* 178 Wash. 298, 34 P.2d 897 (1934); *State v. Owsley,* 126 Wash. 197, 217 P. 999 (1923).

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.

UTTER, J. (concurring)—I am persuaded by Justice Rosellini's dissent in *State v. Parker,* 79 Wn.2d 326, 485 P.2d 60 (1971) that the "dynamite charge" given in this case and in *Parker* should be regarded as harmless error only where it is given as part of the main charge to the jury. The instruction does discourage free and open discussion by its emphasis on the desirability of reaching a unanimous decision when given after the jury has been deliberating for a period of time.

Inasmuch as a majority of the Supreme Court has spoken recently on the matter, however, I believe myself bound by the majority opinion in *Parker* and for that reason only, concur in the majority opinion in this case.

Petition for rehearing denied September 23, 1971.

Review denied by Supreme Court November 9, 1971.