[No. 3562–1. Division One. March 28, 1977.]

DAVID LEVEA, *Respondent,* v. G. A. GRAY CORPORATION, *Appellant,* VALERON, INC., *Respondent.*

216

*Preston, Thorgrimson, Ellis, Holman & Fletcher* and *Charles E. Peery,* for appellant.

*Burns & Schneiderman, James D. Burns, Merrick, Hofstedt & Lindsey,* and *H. Roland Hofstedt,* for respondents.

ANDERSEN, J.—

FACTS OF CASE

A machinist, who was injured when the holding fixture portion of the machine he was operating failed, recovered a $175,000 judgment in a products liability action against the manufacturer of the machine. The manufacturer appeals.

At the time of the injury, the plaintiff David Levea was a machinist working at the Pacific Car and Foundry Company (Paccar) plant in Renton. The machine he was operating, known as a vertical boring mill, was manufactured by the G. A. Gray Corporation (Gray) for Paccar.

Among the products manufactured by Paccar are steel winch cable drums which resemble large spools for thread. The vertical boring mill was used in the manufacturing process to machine rough castings to Paccar's specifications. The plaintiff was operating the milling machine when a 150–pound winch drum being machined spun off of the machine at approximately 300 revolutions per minute.

The steel drum struck the plaintiff, causing him severe injuries. These included heart stoppage, crushed left rib cage, shoulder fractures, a lung injury and numerous broken teeth. The injuries left some deformities and other permanent residuals.

The accident was caused by a failure of the fixture which held the winch drum casting in place on the machine during the machining process. The holding fixture gave way when one of its components, a steel stud, broke. Investigation established that the stud, which is a piece of 3/4-inch threaded steel rod, was of low strength steel rather than the much stronger high tensile (hardened) steel called for by the design specifications for the machine.

A central factual issue in the case was who was responsible for the wrong kind of stud being in the holding fixture. As a consequence, considerable attention at the trial was devoted to tracing the genealogy of the milling machine and the holding fixture in question. This showed the following.

Paccar ordered the milling machine and two holding fixtures from Gray, a machine tool manufacturer. Gray contracted with Valeron, Inc. (Valeron) to design and build the two holding fixtures. Valeron designed the holding fixture and prepared drawings and specifications calling for the use of high tensile (hardened) steel studs. Valeron subcontracted the building of the holding fixtures to yet another firm, James Tool Company (James). James constructed the holding fixtures, and because it was a "rush job," delivered them directly to Gray's plant. The holding fixtures were placed on the milling machine at Gray's plant, and test runs at machining winch drums were made there. The milling machine and holding fixtures were disassembled, shipped to Paccar's plant and reassembled there under the supervision of Gray's factory representative.

The plaintiff sued both Gray and Valeron for damages on account of his personal injuries and damages sustained. Pursuant to CR 13(g) Gray cross claimed against Valeron, seeking indemnity. The other defendants named in the plaintiff's action, Warner–Swayzee Corporation, Barry–Wright Corporation, and Vlier Engineering Corporation were eventually let out of the case and are not involved in this appeal.

At trial, Gray presented testimony that only high strength steel studs were in the holding fixture when it was

shipped to Paccar. Paccar employees testified to just the opposite effect, that the low strength steel stud which broke was the identical stud that was in the holding fixture when it arrived at Paccar's plant. Gray also presented testimony that the accident was due to intervening causes not of its making as well as misuse of the machine by Paccar employees, including the plaintiff.

Valeron was a defendant during the trial but was dismissed out of the case by the trial court after the parties rested and before the case was submitted to the jury. For convenience, we will refer to Gray herein as though it were the only defendant.

The trial was strenuously contested and a broad range of errors is claimed. The numerous assignments of error resolve into six ultimate issues which are dispositive of the appeal.

## ISSUES

ISSUE ONE. Did the plaintiff's proof of proximate causation fail as a matter of law?

ISSUE TWO. Did the trial court err in its admission of opinion testimony?

ISSUE THREE. Was it error to deny the defendant Gray's motion for a directed verdict and its later motion for judgment n.o.v.?

ISSUE FOUR. Did the trial court err in instructing the jury?

ISSUE FIVE. Was the defendant Gray entitled to a new trial on grounds of error in the admission of evidence, misconduct of opposing counsel and juror misconduct?

ISSUE SIX. Did the trial court err in dismissing Gray's codefendant, Valeron, at the close of all the evidence, and in not giving Gray judgment over against Valeron based on principles of indemnity?

ISSUE ONE.

CONCLUSION. On the evidence presented, proximate cause was an issue to be resolved by the jury.

It is the defendant Gray's contention that plaintiff's proof of proximate causation failed as a matter of law. It argues that "there was a total failure to prove or even present evidence that the accident would not have happened if the specified studs had been in the clamping device at the time in question."

■ An act or happening is a proximate cause of an injury when it has been a factor in bringing about in a direct sequence an unfortunate result, and the result would not have happened unless the act had been committed or the happening taken place. *Harris v. Burnett,* 12 Wn. App. 833, 837, 532 P.2d 1165 (1975). The jury was correctly instructed as to the definition of proximate cause. WPI 15.01, 6 Wash. Prac. 105 (1967).

■ Generally speaking, the question of whether or not a particular defendant's conduct was a proximate cause of the plaintiff's harm is an issue for the jury, not the court. It is a question of fact which the jury is as well able to decide as the court. *Moyer v. Clark,* 75 Wn.2d 800, 804, 454 P.2d 374 (1969).

In this case, the defendant's chief tool designer testified that it was imperative that the studs in the holding fixture in question be of heat treated steel and that soft steel studs would not be strong enough to do the job. Paccar's chief metallurgist tested the studs which were removed from the fixture following the accident and found them to be of low strength steel. The metallurgist also testified that the studs which had been specified for the fixture were high strength steel some 2 1/2 times stronger than those found in the fixture.

The plaintiff's shift foreman was a machinist of 10 years' experience including experience operating the machine in question. He witnessed the accident and checked the machine following it. He testified that the stud was not strong enough, was defective and that the accident was caused by the stud breaking. A licensed professional engineer, Mr. Roberts, testified that in his opinion the accident

was caused by the weakness of the stud in the fixture which broke.

In view of the evidence presented, the trial court correctly ruled that the question of causation in fact was one for determination by the jury. *Moyer v. Clark, supra; Smith v. American Mail Line, Ltd.,* 58 Wn.2d 361, 366, 363 P.2d 133 (1961). *See also Bombardi v. Pochel's Appliance & TV Co.,* 9 Wn. App. 797, 515 P.2d 540 (1973).

ISSUE TWO.

CONCLUSION. The trial court did not err in admitting opinion testimony of experienced machinists familiar with the machine in question or other similar equipment. Neither their testimony nor that of the mechanical engineers who testified as witnesses for the plaintiff was speculative or based on improper hypothetical questions. Any deficiency in the qualifications and testimony of such witnesses went to the weight of their testimony rather than to its admissibility.

The defendant challenges the opinion testimony presented by the plaintiff. It does so on a number of grounds including that the witnesses were unqualified and their testimony speculative. It argues that the Paccar machinists who testified were not sufficiently qualified as experts to entitle them to state opinions about the cause of the accident or to give opinions concerning the complex forces, effects and causal relationships involved.

It is to repeat the obvious to state that no expert opinion is admissible over objection unless the witness has first been qualified by a showing that he or she is sufficiently expert on the subject matter involved to state a helpful and meaningful opinion. 5 R. Meisenholder, Wash. Prac. § 353, at 339 (1965).

However, the admission or exclusion of opinion evidence is within the sound discretion of the trial court. *Weber v. Biddle,* 72 Wn.2d 22, 24, 431 P.2d 705 (1967); *Martin v. Huston,* 11 Wn. App. 294, 301, 522 P.2d 192 (1974). If the reasons for admitting or excluding the opinion evidence are both fairly debatable, the trial court's exercise of discretion

will not be reversed on appeal. *Hill v. C. & E. Constr. Co.,* 59 Wn.2d 743, 746, 370 P.2d 255 (1962); *R.A. Hanson Co. v. Aetna Cas. & Sur. Co.,* 15 Wn. App. 608, 613, 550 P.2d 701 (1976).

The machinists who testified were journeymen machinists experienced with either the machine in question or similar ones. A journeyman machinist, according to the testimony, serves a formal apprenticeship of 4 years where he is required to become experienced at his trade, demonstrate proficiency in the use of various machines and be approved by his superiors. As the trial court held in ruling on defendant's post–trial motions,

> the opinion of trained mechanics in the use of machinery that they have worked with in their career, in expressing opinions on mechanical subjects relative to that machine, was an appropriate expression of opinion elicited from those witnesses on that subject.

We have reviewed the expert testimony complained of and do not find it to have been speculative. This is also true of the testimony of plaintiff's mechanical engineer, Mr. Roberts. The defendant claims that his testimony "was based on an erroneous assumption of the coefficient of friction." The record reflects that although the defendant's engineer testified to a different coefficient of friction of steel clamping surfaces than the witness Roberts did, the Roberts' testimony on the same subject came in without objection and was therefore properly before the jury.

■■ Where the facts upon which a hypothetical question is based are subject to conflicting evidence, the answer to such a question is not rendered speculative or otherwise inadmissible providing that the question fairly incorporates the facts supported by evidence under the examiner's theory. *Helman v. Sacred Heart Hosp.,* 62 Wn.2d 136, 150, 381 P.2d 605, 96 A.L.R.2d 1193 (1963); *Kuster v. Gould Nat'l Batteries, Inc.,* 71 Wn.2d 474, 482, 429 P.2d 220 (1967). Furthermore, the trial court has wide discretion in determining the propriety of the hypothetical questions and

answers and to supervise and control hypothetical questions. *Helman v. Sacred Heart Hosp., supra.*

The jury was properly instructed with respect to expert testimony, including that the jurors were not bound by it. WPI 2.10, 6 Wash. Prac. 23 (1967). Additionally, the trial court took the added precaution of instructing the jury that it was for the jury to determine whether the facts stated in any hypothetical question asked of expert witnesses in the case were true or proven, and if not true or proven, that it was their duty to disregard opinions based thereon. We must presume that the jury followed those instructions. *Balandzich v. Demeroto,* 10 Wn. App. 718, 725, 519 P.2d 994 (1974).

The expert testimony of the parties was in substantial conflict. In the final analysis, evaluation of that testimony as with the other testimony in the case was for the jury. *Smith v. American Mail Line, Ltd.,* 58 Wn.2d 361, 368, 363 P.2d 133 (1961). The claimed deficiencies in the experts' qualifications and opinions properly went to the weight of such testimony and not to its admissibility. *Palmer v. Massey–Ferguson, Inc.,* 3 Wn. App. 508, 511, 476 P.2d 713 (1970).

The trial court did not err in admitting the opinion testimony in question.

Issue Three.

Conclusion. The trial court did not err in denying the defendant Gray's motion for a directed verdict and its motion for judgment n.o.v., since there was evidence or reasonable inferences therefrom to sustain a verdict for the plaintiff. The court will not reevaluate the credibility of witnesses seen and heard by the jury.

The defendant assigns error to the trial court's failure to grant its motion for a directed verdict. In support thereof it urges as grounds the matters discussed in connection with Issue One and Issue Two.

In addition, the defendant claims that unintended uses of the machine and intervening acts and changes by third parties absolved it from liability. The defendant points to

evidence which it introduced showing that modifications were made in the machine by Paccar and its employees as well as what the defendant says was improper inspection, maintenance and use of the machine by Paccar. The defendant argues from this that it "cannot be held responsible for the intervening acts and changes and cannot therefore be liable to the plaintiff."

There was contrary testimony presented, however, which if believed, showed that the modifications were anticipated and not particularly significant and that the machine was properly maintained and used.

■ The trial court does not exercise any discretion on a motion for a directed verdict, but rather, assumes the truth of the nonmoving party's evidence and all reasonable inferences therefrom, views all the evidence in a light most favorable to the nonmoving party and must deny the motion whenever there is substantial evidence to support the nonmoving party. *Shelby v. Keck,* 85 Wn.2d 911, 913, 541 P.2d 365 (1975); *Rhoades v. DeRosier,* 14 Wn. App. 946, 948, 546 P.2d 930 (1976).

Here the jury was instructed that before it could find the defendant liable on the basis that the fixture was defective, the plaintiff had the burden of proving that the defect existed at the time the product left the hands of the defendant. The jury was also instructed as to the effect of the fixture being changed or used in an abnormal or unintended way. It was likewise properly instructed on intervening cause. WPI 12.05, 6 Wash. Prac. 89 (1967). The jury had to have found against these contentions by the defendant in order to return a verdict for the plaintiff, as it did. We cannot reevaluate the credibility of witnesses seen and heard by the jury. *State v. Hoffman,* 64 Wn.2d 445, 451, 392 P.2d 237 (1964). The trial court did not err in denying the defendant Gray's motion for a directed verdict.

In ruling on the motion for a judgment notwithstanding the verdict, the court must view the evidence in the light most favorable to the nonmoving party, and all material

evidence and reasonable inferences favorable to the non-moving party must be taken as true. *State v. Hall,* 74 Wn.2d 726, 727, 446 P.2d 323 (1968); *Rockefeller v. Standard Oil Co.,* 11 Wn. App. 520, 521, 523 P.2d 1207 (1974). If there is any competent and substantial evidence in support of the judgment, as opposed to a mere scintilla, the verdict must stand. *Elmer v. Vanderford,* 74 Wn.2d 546, 549, 445 P.2d 612 (1968); *Kasparian v. Old Nat'l Bank,* 6 Wn. App. 514, 516, 494 P.2d 505 (1972). No element of discretion is involved. *Sepich v. Department of Labor & Indus.,* 75 Wn.2d 312, 321, 450 P.2d 940 (1969); *Sunde v. Tollett,* 2 Wn. App. 640, 641, 469 P.2d 212, 41 A.L.R.3d 319 (1970).

For the reasons above stated, neither did the trial court err in denying the defendant's motion for a judgment n.o.v.

ISSUE FOUR.

CONCLUSION. There was no instructional error.

The defendant assigns error to two of the instructions given by the trial court and to a number of the defendant's proposed instructions which were not given. Only one instruction in each category is argued; therefore, we will only consider those two. *Schmitt v. Matthews,* 12 Wn. App. 654, 665, 531 P.2d 309 (1975).

Error is assigned to the failure to give the defendant's proposed instruction No. 5. It reads:

> When considering the burden of proof, you must consider if the burden of proof has been met by considering the evidence and not by speculation, guess or conjecture.

The trial court might well have given this instruction or one akin to it had it chosen to do so. *Vanderhoff v. Fitzgerald,* 72 Wn.2d 103, 107, 431 P.2d 969 (1967); *Young v. Group Health,* 85 Wn.2d 332, 340, 534 P.2d 1349 (1975). It did not, however.

The test of sufficiency of instructions given on a party's theory of the case is that (1) they permit the party to argue his or her theory of the case; (2) they are not misleading; and (3) when read as a whole they properly inform the trier of the fact on the applicable law. *State v. Dana,* 73 Wn.2d 533, 537, 439 P.2d 403 (1968); *State v. Lane,* 4 Wn.

App. 745, 747, 484 P.2d 432 (1971). It is discretionary with the trial court as to how many instructions are necessary to fairly present a litigant's theories. *Anderson v. Red & White Constr. Co.,* 4 Wn. App. 534, 538, 483 P.2d 124 (1971).

The trial court also has considerable discretion as to how its instructions will be worded. *Kjellman v. Richards,* 82 Wn.2d 766, 768, 514 P.2d 134 (1973); *State v. Biggs,* 16 Wn. App. 221, 225, 556 P.2d 247 (1976). It is axiomatic that the instructions are to be read as a whole. *State v. Dana, supra* at 536; *State v. Lane, supra.*

When read together, the instructions given set forth the defendant Gray's theory of the case. They permitted Gray to fully argue its theory of noncausation and its claim that the plaintiff failed to sustain his burden of proof with respect to causation. The failure to give the defendant's proposed instruction No. 5 was therefore not error.

The trial court's damage instruction informed the jury that if it found for the plaintiff, it could award damages for any impairment of future earning capacity. The defendant assigns this as error and argues that "there was no testimony or evidence to support an instruction or an award for impairment of earning capacity in the future, however, such an award was made resulting in excessive damages which requires a new trial."

The language excepted to in the damage instruction was not improper. There was substantial evidence that the plaintiff sustained severe and permanent injuries and that, although he was ultimately able to return to work, he was unable to work as well as before. That was sufficient to justify this instruction. *Murray v. Mossman,* 52 Wn.2d 885, 889, 329 P.2d 1089 (1958). *See Bitzan v. Parisi,* 88 Wn.2d 116, 558 P.2d 775 (1977). The subject of excessive damages was not separately assigned as error nor argued.

We find no error in the instructing of the jury.

ISSUE FIVE.

█ CONCLUSION. The primary question presented by a motion for a new trial is whether the losing party received a

fair trial. Particularly where the claimed grounds for a new trial involve the assessment of occurrences during the trial and their potential effect on the jury, we will accord great deference to the considered judgment of the trial court in ruling on such a motion. Our review of the entire record of this case satisfies us that the trial court did not err in denying the defendant's motion for a new trial.

The defendant's motion for a new trial raised as claimed errors the admission of opinion testimony and instructions which have already been discussed. The motion also raised a number of additional claims of error in the admission of evidence, conduct and argument by opposing counsel and conduct of the jury.

The defendant's detailed argument on these additional claims of error includes the following: that allegedly plaintiff's counsel violated the trial court's order in limine by injecting evidence and argument as to changes in the machine following the accident; that during plaintiff's closing argument to the jury, insurance was improperly injected into the case by referring to mortality tables computed by insurance companies; that in closing argument plaintiff's counsel also invited the jury to speculate as to the evidence and appealed to such sectional instincts as the jury may have had by referring to such things as Gray being "back East" and to one of its witnesses as the man with "that nice southern accent"; and that it was juror misconduct when a juror referred to his own experiences with invoices during the jury's deliberation concerning an invoice which had been admitted into evidence.

The plaintiff argues in turn that much of the evidence objected to was on subjects opened up by defense counsel or was not objected to at the time and that for these and other reasons does not constitute reversible error.

Our review of the record shows that the trial court exercised care and patience throughout, endeavoring to preserve a fair trial to all parties. The trial court held a number of conferences with counsel in chambers and otherwise out of the presence of the jury whereby it endeavored to work out

potential evidentiary and other problems in the absence of the jury. The matters here raised as claims of error were for the most part argued and discussed at length during the course of trial and were again reviewed in detail on the two occasions that the trial court considered the defendant's post–trial motions.

The following excerpts from the trial court's oral ruling on the defendant's post–trial motions are fairly reflective of its evaluation of these claims of error.

It seemed to the Court that the concentration of the proof as it was presented to the jury, and as to what the jury heard, still remained within the limitations of the areas of proof on change that the Court attempted to define with counsel before the trial commenced. There were items of proof that did come in.

There was at least one photograph that exhibited some evidence of some change on it that had to, during the course of direct or cross–examination, be related to as not existing at the time of this accident. Therefore, insofar as there was some commentary that perhaps would have better been brought up because of the pretrial discussion, other than made in front of the jury on the subject of changes, the Court is not of the impression that that commentary, whatever it was, in any way was prejudicial in the trial of the issues on the cause of action submitted to the jury between the plaintiff and the defendant.

. . .

The argument of counsel to the jury following the dismissal of Valeron, it appears to the Court, is consistent with the evidence and the proof and the instructions given by the Court. . . .

. . .

The incidental mention of life insurance, insofar as an actuarial table is concerned, the Court does not treat as at all significant in the trial of this cause, nor were the references to the eastern corporation or its representatives of such a nature as to be inflammatory or cause for bias or prejudice in the Court's mind.

. . .

The Court has read the affidavits with regard to jury misconduct, and is of the opinion that the affidavits bear upon factors a jury considered as they related to evidence that was offered during the trial. The individual points of

view of a jury as to why they give more weight or less weight to some evidence during a trial is a part of the deliberative function of the jury, and to that extent should inhere in the verdict as far as the Court is concerned.

 The evidentiary rulings of which the defendant complains were discretionary. *Jacobs v. Brock,* 73 Wn.2d 234, 238, 437 P.2d 920 (1968). So were the rulings in connection with the allegations of misconduct of counsel. *Seattle v. Arensmeyer,* 6 Wn. App. 116, 121, 491 P.2d 1305 (1971); *Peterson v. Gilmore,* 5 Wn. App. 55, 57, 485 P.2d 622 (1971); *State v. Thach,* 5 Wn. App. 194, 201, 486 P.2d 1146 (1971). The claim of jury misconduct is clearly of the kind which inheres in the verdict and which therefore we may not consider. *Gardner v. Malone,* 60 Wn.2d 836, 841, 376 P.2d 651 (1962); *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 532, 554 P.2d 1041 (1976).

We find no error in the above set out rulings by the trial court.

The trial court concluded its ruling on the defendant Gray's post–trial motions by holding that in its opinion, taking everything claimed as error in its proper context, Gray had been accorded a fair trial. As we recently held,

> the primary question presented by a motion for new trial is whether the losing party received a fair trial. *State v. Taylor,* 60 Wn.2d 32, 371 P.2d 617 (1962). In commenting on the deference to be given the trial judge, the court in *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 397 P.2d 857 (1964), stated at page 440,
>
>> And, it is in this area of the new–trial field that the favored position of the trial judge and his sound discretion should be accorded the greatest deference, particularly when it involves the assessment of occurrences during the trial which cannot be made a part of the record, other than through the voice of the trial judge in stating reasons for the action taken.

*Freeman v. Intalco Aluminum Corp.,* 15' Wn. App. 677, 680, 552 P.2d 214 (1976).

The trial court did not abuse its discretion in denying the motion for a new trial. *Olpinski v. Clement,* 73 Wn.2d 944,

951, 442 P.2d 260 (1968); *Freeman v. Intalco Aluminum Corp., supra.*

ISSUE SIX.

CONCLUSION. The trial court properly dismissed the codefendant Valeron based on insufficiency of the evidence as to Valeron. Additionally, the defendant Gray made no objection to the dismissal at the time.

The defendant Gray alleges that the trial court erred in dismissing its codefendant Valeron from the case and that Gray was entitled to judgment over against Valeron based on principles of indemnity.

When Valeron was dismissed from the case at the close of all the evidence, the dismissal was likely of tactical assistance to Gray's case in some respects. In any event, whether for that reason or another, Gray made no objection whatsoever to the dismissal.

The reason given by the trial court for the dismissal was that the uncontroverted testimony in the case, including that of Gray's own employees who inspected the fixtures when they were delivered to Gray, was to the effect that the proper high tensile steel studs, which were of a distinctive and identifiable character, were in the attachments.

In addition, although the actual stipulation was not made a part of the appellate record, it is clear from various references by the trial court and counsel that are in the record, as well as from the appellate briefs and arguments, that Gray's indemnity cross claim against Valeron was reserved for the trial court's determination rather than that of the jury. It is not clear from the record before us whether, under the terms of that stipulation, Gray had the right to later present evidence of Valeron's fault additional to the evidence submitted to the jury. We will not address ourselves to this possibility, however, since it is not now urged by Gray that there was any such additional evidence.

As to the matter of Valeron's dismissal as a defendant to Gray's cross claim, the trial court noted in ruling on the post–trial motions, that

it was implicit that there could not be an indemnity over by Gray against Valeron where the proof didn't measure up in a legal sense in the claim that is being contested by all parties before this court.

■ A challenge to the sufficiency of the evidence· is properly granted when, accepting the evidence of the opposing parties as true and allowing them all reasonable inferences from it, a prima facie case is not presented. *Dohrer v. Wakeman,* 14 Wn. App. 157, 165, 539 P.2d 91 (1975). There was no proof that Valeron was negligent in any of the respects claimed or that the fixture was in a defective condition at the time it was delivered to Gray. *See* Restatement (Second) of Torts § 402A, comment *g* at 351 (1965) and *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 535, 452 P.2d 729 (1969). Under that state of the proof, the trial court did not err in dismissing Valeron entirely out of the case at the close of all the evidence.

Furthermore, even if we were to assume that there was some reasonable inference from the evidence that Valeron was negligent or was responsible in some other way for the failure of the fixture, under the stipulation of the parties the trial court had the right to make the factual determination against Gray on its indemnity cross claim against Valeron. The trial court's dismissal of Valeron was therefore proper on this alternative basis as well.

Judgment affirmed.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied June 16, 1977.

Review denied by Supreme Court December 2, 1977.