[No. 44799.   En Banc.   May 18, 1978.]

BOARD OF REGENTS OF THE UNIVERSITY OF WASHINGTON,
*Respondent*, v. FREDERICK & NELSON,
ET AL, *Appellants*.

*Skeel, McKelvy, Henke, Evenson & Betts,* by *John A. Roberts, Clinton, Fleck, Glein & Brown,* by *Robert V. Brown,* and *Reed, McClure, Moceri & Thonn, P.S.,* by *Roy J. Moceri* and *William R. Hickman,* for appellants.

*Helsell, Fetterman, Martin, Todd & Hokanson,* by *William A. Helsell* and *Linda J. Cochran,* for respondent.

BRACHTENBACH, J.—Plaintiff University sued for damages resulting from a fire at its health science laboratory. The University contracted with defendant Frederick & Nelson (F & N) to purchase furniture for that laboratory. The contract was negotiated through defendant Timmerman, a sales representative for defendant Rademacher, the manufacturer of the furniture.

Plaintiff contended that a fire occurred as a result of defendant Rademacher's conduct in the performance of the contract. By special interrogatory the jury found that defendant Rademacher was negligent and responsible for the fire. Under the court's instructions the other defendants were also held liable. Defendants appeal from a judgment of $237,669.04 entered upon a jury verdict. We reverse.

These are the facts. The University needed certain furniture for its health science laboratory. It let bids. Sales representative defendant Timmerman asked F & N to bid, using furniture manufactured by defendant Rademacher. Defendant F & N was the successful bidder and consequently occupies the position of the seller in this dispute. The contract terms will be detailed later.

After part of the furniture had been installed, the University notified the seller, F & N, that the furniture did not meet specifications. Two meetings were held to resolve the problem, resulting in defendant Rademacher's agreement to refinish the furniture on site. Refinishing involved sanding, oiling and wiping down the furniture. The night of the fire, Rademacher's workmen left the site at approximately 1:30 a.m. The fire was discovered about 7:30 a.m. It was plaintiff's theory that oily rags were left on the premises and

that spontaneous combustion caused those rags to ignite the fire which caused plaintiff's damage.

Three issues are raised by defendant/appellants. Plaintiff, on cross appeal, raises a fourth question. First, the court instructed that if the defendant Rademacher, the manufacturer of the furniture and the one doing the refinishing, was found to be negligent, then the defendants F & N, the seller, and defendant Timmerman, the sales representative, were also liable. Thus the court held, as a matter of law, that in the bringing of the furniture up to specifications the manufacturer was the agent of the other two defendants, the seller and the sales representative. These two defendants held responsible under this agency theory claim that the instruction was erroneous.

The instruction was proper under the facts. The contract between the University and the seller (F & N) contained a warranty that the goods would conform to the specifications of the bid. Sales representative Timmerman, in writing, guaranteed the furniture against defects.

■ It is argued that Rademacher, the manufacturer, was an independent contractor for whose actions the other defendants are not liable. There is a clear exception to that general principle. When one contracts to perform a specified service or supply a product of a certain quality, liability for negligent performance of the contract cannot be escaped by engaging an independent contractor to perform the very duty which the contract requires. This is the rule of *White Pass Co. v. St. John,* 71 Wn.2d 156, 427 P.2d 398 (1967). In *White Pass,* the owner contracted with a general contractor to construct a ski lodge for the owner. The general contractor engaged a subcontractor, St. John, to install the floor covering. The negligence of the subcontractor caused the fire. The owner sued the general contractor and the subcontractor. We held that the general contractor was liable along with the subcontractor. We said at page 161:

> The theory of liability is that the contractor has agreed to perform the work specified in the contract. In the absence of a provision that he may subcontract the work

and that the owner will look only to the subcontractor for compensation for damage if the work is not properly done, there is an implied undertaking on the part of the contractor to see that the work is performed with due care. As far as his relations with the owner are concerned, the subcontractor employed by him is his agent for whose negligence he is responsible to the owner.

(Citations omitted.)

Defendants argue that the *White Pass* rule is limited to construction contracts and that liability is predicated upon the right to control arising out of an employer–employee relationship. Thus the seller and the sales representative would have us hold that the *White Pass* exception does not apply to a sales contract and, in any event, absent control over defendant Rademacher, they cannot be liable.

The words "employer" and "employ" in *White Pass* were not used as words of art in the legal sense. It is clear that the subcontractor in *White Pass* was not "employed" in an employer–employee relationship. The general contractor contracted with the subcontractor to perform one of the duties which the general contractor was bound to perform by his contract with the owner.

Is the *White Pass* rule limited to building contracts? We perceive no policy reasons why it should be so limited. The rule is not dependent upon the subject matter of the contract. Nor is it dependent upon control over the subcontractor.

The rule, rather, depends upon the nature of the contractual obligations of the person sought to be held liable for the acts of a third person. Here defendant Rademacher was performing a duty which had been contractually assumed by the two other defendants. Those defendants allowed Rademacher to fulfill their obligations to bring the furniture up to specifications and they are liable for his actions in performing their contractual duties.

■ Defendants next assign error to the court's instruction which withdrew from the jury the question of whether

the fire had been caused by arson. One of the defense theories was that the fire was arson caused. It is basic that each party is entitled to instructions on its theories, but only if there is substantial evidence to support such theory. *Woods v. Goodson*, 55 Wn.2d 687, 349 P.2d 731 (1960).

The supporting facts for a theory and instruction must rise above speculation and conjecture. *Pidduck v. Henson*, 2 Wn. App. 204, 467 P.2d 322 (1970); *Wood v. Meyers*, 48 Wn.2d 746, 296 P.2d 525 (1956). There was no testimony that the fire in fact was caused by arson. The University's experts, the investigating fire officials, admitted on cross-examination that they had considered arson, but rejected it as a cause because of certain characteristics of the fire. Defendants presented no evidence that arson was the cause. At best, they argue inferences from the evidence. For example, they point out the accessibility of the room to third parties, the location of certain items different from that testified to by the workmen, the fact that there had been arson fires in the University area and that ignition from spontaneous combustion is rather rare.

Even cumulatively, these facts do not rise above a mere possibility of arson. There was not substantial evidence that arson was in fact the cause and it was proper to withdraw the issue from the jury.

The basis of reversal is the fact that nine documents, offered by the plaintiff but not admitted, were sent to the jury room along with the admitted exhibits. The nine documents were extensive and related both to liability and damages. It is clear from the record that these documents went to the jury through inadvertence, and not with knowledge nor by design or intent of the court or the attorneys.

■ We start with the proposition that only admitted exhibits are to go to the jury room. CR 51(h). Yet, not every inadvertent submission of unadmitted documents will lead to a new trial. In *Gardner v. Malone*, 60 Wn.2d 836, 846, 376 P.2d 651 (1962), the court faced juror misconduct

by an unauthorized view of an accident scene and consideration of matters outside the record. Those are matters analogous to the availability to the jury of documents not admitted. The court held that if it were reasonably doubtful whether the improper conduct affected the amount of the verdict or the decision on any other matters in issue, then the verdict should be set aside. The court put it another way, "[if] there is *reasonable doubt* as to its effect [the misconduct], that doubt must be resolved against the verdict."" *Gardner v. Malone, supra,* also pointed out at page 846:

> Trial courts have wide discretion in granting or refusing new trials, and, ordinarily, we will not interfere with the exercise of that discretion except in situations where questions of law are involved; however,
>
> ". . . a much stronger showing of an abuse of discretion is required to set aside an order granting a new trial, than one *denying* a new trial."

(Citation omitted.)

Examining the unadmitted documents which went to the jury, several raise a reasonable doubt as to their effect upon the verdict, both as to liability and damages, and that doubt must be resolved against the verdict. We must bear in mind that the central issue of liability was whether the fire was caused by spontaneous combustion from oily rags allegedly left by the workmen of defendant Rademacher. There was extensive testimony and vigorous cross-examination on this linchpin of liability.

One of the unadmitted documents which went to the jury was a report from a firm of consulting engineers. It contained this statement: "The fire was apparently caused by spontaneous combustion in rags soaked with linseed oil, spreading to nearby desks and containers filled with linseed oil." The author of that report was not a witness and the defendants were denied the right to cross-examine on this critical point of liability. Thus the jury was exposed to an apparent expert's conclusion as to the very foundation of

liability. The defendants were denied the opportunity to explore the source and validity of the expert's conclusion.

In another document, unadmitted but submitted to the jury, the defendant Timmerman wrote to the defendant F & N regarding a meeting subsequent to the fire. This document confirmed a meeting between those defendants and included this statement: "It was agreed at our meeting that Frederick & Nelson would pay an additional expense over my invoice price for the total contract of $1,000. This expense would be Frederick's contribution to the total cost of repairs and replacements of the furniture and would be payable upon completion of these repairs and replacements." Obviously this agreement by Frederick & Nelson to contribute to the cost of repairs could be construed by the jury as an admission of responsibility. At the very least, it was a tacit admission of liability.

Other documents related to damages sustained by the plaintiff. There is a reasonable doubt as to their effect upon the verdict. That doubt must again be resolved against the verdict. *Gardner v. Malone, supra.*

We conclude that there is a reasonable doubt as to the effect of these documents both on the issue of liability and the amount of damages and a new trial should have been ordered.

Plaintiff cross–appeals from the denial of prejudgment interest. Since we are ordering a new trial, we do not rule on that issue.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.