[Civ. No. 51614. Second Dist., Div. Two. Sept. 15, 1978.]

JOSE DOMINGO GARCIA, Plaintiff and Appellant, v.
JOSEPH VINCE COMPANY et al., Defendants and Respondents.

## Counsel

Floyd H. King and Richard E. Ashbran for Plaintiff and Appellant.

Buck, Molony, Nimmo & Ammirato, Mark D. Rutter, Haight, Dickson, Brown, Bonesteel & Rigg, Elliott D. Olson and Roy G. Weatherup for Defendants and Respondents.

## Opinion

**BEACH, J.—**

NATURE OF APPEAL:

Plaintiff appeals from judgment of nonsuit in a personal injury action. Appellant's eye was injured when an opponent's sabre broke through a fencing mask worn by appellant during a fencing bout. He sued American Fencer Supply (American) as the alleged manufacturer of the sabre and Joseph Vince Company and Junice T. Mori (Vince) as the manufacturer-supplier of the mask. The causes of action are founded upon products liability.

FACTS:

The general facts are as follows: Appellant was participating in a fencing meet as a member of his college team. His opponent (Croddy) was using a sabre that was purchased either from American or Vince. During this and other meets, some of the team members including Croddy would sometimes use their own blades and sometimes use those of the school. Both Croddy and the school had purchased blades from both Vince and American. Immediately after the accident the blade used was examined by the coach of each team. One coach found the tip to be much thinner than a proper fencing regulation tip. The other coach found that it complied with the regulations then in effect. After the accident the blades were all placed back in the team bag of Croddy's school. The identity of the particular blade in question was thereby lost. It was not produced at trial, apparently being lost or mixed up with the others in the shuffle.

The face mask worn by appellant was produced at trial. It was tested and photographed and the test results and photographs were also produced. It had been purchased from Vince about one month before the accident. Judgment of nonsuit was granted in favor of both defendants, the alleged blade manufacturer American and the admitted mask manufacturer-supplier Vince. Other significant specific facts will be related in appropriate parts of the discussion below.

ISSUES:

There is a significant difference between the case against the alleged blade manufacturer, American, and the case against the mask manufacturer, Vince. Each presents a different issue. ▮▮▮ They are (1) as to American: where a plaintiff's evidence establishes that one, but not both, of two defendants produced a defective product, but the evidence does not disclose which one, is that sufficient evidence to permit a jury to determine liability of either defendant? ▮▮▮ And (2) as to Vince: does evidence of an injury, received while engaged in an inherently dangerous sporting event which protective equipment was intended to guard against, establish a prima facie case of strict liability for improper design against the manufacturer of the equipment?

OUR HOLDING:

We answer "no" to both questions, and we affirm the judgments as to both defendants.

DISCUSSION:

## A

## THE BLADE

### 1. *The general rule on nonsuits.*

A nonsuit may be granted only where, disregarding conflicting evidence on behalf of defendants and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff. (*Meyer* v. *Blackman,* 59 Cal.2d 668, 671 [31 Cal.Rptr. 36, 381 P.2d 916]; *Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768]; *Gherna* v. *Ford Motor Co.,* 246 Cal.App.2d 639, 646 [55 Cal.Rptr. 94].)

### 2. *Defectiveness of the blade.*

One witness who saw the actual blade at the time of the accident testified that the blade was narrower than regulations then permitted. Presumably this would then support an inference that the blade was sharp enough to pierce the mask.[1] For the purposes of our discussion here we may accept that testimony as sufficient to establish substantial evidence to permit a jury to find liability for a defective product against the manufacturer. A blade so improperly thin and sharp that it could pierce the protective mask could be found to be a defective product under the rules of fencing. It is not the type of weapon intended to be used or expected to be encountered during a fencing contest.

### 3. *Identity of the maker or supplier.*

Irrespective of proving the defectiveness of the blade causing the injury to him, appellant further established only that the blade was made

---

[1]There was no testimony that the blade was pointed. The inference could reasonably be drawn that the sharpness was at the corners of the tip rectangle (when viewed on end) created when the blade was folded in manufacture to blunt the end.

and supplied by either (a) American or by (b) Vince, not by both; but which one of the two was unknown. There was no evidence that the blade was in fact known to have been manufactured by American or to have been manufactured by Vince. Croddy the user could not recall whether at the time he used his own or a school blade, and both he and school purchased from both defendants. Croddy's coach was also unable to say from which source the blade came. This is insufficient evidence to permit the issue of liability to be presented to a jury. The jury on the basis of such evidence would be purely speculating as to who should be liable. There was not contradictory or conflicting evidence to be resolved that either defendant manufactured or produced the blade. The evidence was evenly divided as to who possibly could have been the supplier of the blade.

Thus, appellant failed to clear the first hurdle in establishing respondent American's liability for any defect in the subject sabre. He did not sufficiently identify the sabre as being a product of American.

In an annotation in 51 A.L.R.3d 1344, 1349, on product liability the applicable rule is stated as follows: "Regardless of the theory which liability is predicated upon, whether negligence, breach of warranty, strict liability in tort, or other grounds, it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product . . . ." (Fns. omitted.) No California cases have specifically considered this single issue but agreement with the above rule of law is implied in the holding of *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], that a manufacturer is liable when *he* places a defective product in the hands of a consumer. Here, the sabre could have originated with either of two different sources of supply. This evidence is not sufficient to link American with Mr. Croddy's sabre by anything more than a chain of conjecture.

Appellant argues that when the evidence is equally balanced as to who supplied the alleged defective product, under the rule of *Summers* v. *Tice,* 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91], the burden of proof should shift to respondent to establish who sold the product. This argument has no merit. In *Summers* v. *Tice, supra,* 33 Cal.2d 80, the plaintiff established that both defendants had acted negligently by shooting in his direction and thus both violated a legal duty to him. The burden of proof then shifted to the defendants to prove which one's birdshot caused the injury.

Here, the appellant has not shown that either respondent has violated a duty to him (i.e., produced the defective product) and seeks wrongly to place on them the burden of proving his case which he himself has found too heavy to bear.

In the case of *Wetzel* v. *Eaton Corporation* (D.Minn. 1973) 62 F.R.D. 22, the plaintiff was injured as the result of an accident caused by a faulty tractor part. The part was supplied to the tractor manufacturer by one of two component manufacturers. After the tractor was repaired, the adapter was either discarded or destroyed and so it was unavailable for inspection. Inspection was the only means by which the manufacturer of the part could be identified. The court granted defendant component manufacturers' motion for summary judgment rejecting plaintiff's reference to *Summers* v. *Tice, supra,* 33 Cal.2d 80, and holding that the facts gave equal support to two inconsistent inferences thus inviting a verdict based purely on conjecture. We find that *Wetzel* v. *Eaton Corporation, supra,* correctly states the appropriate rule applicable to the case at bench. (See also *Miller* v. *Schlitz Brewing Co.,* 142 Cal.App.2d 109 [297 P.2d 1024], holding nonsuit and dismissal appropriate where evidence fails to identify the supplier of the defective product.) The nonsuit in favor of American as alleged supplier of the blade was proper.

B

THE FACE MASK

1. *The rule applicable to nonsuit.*

The same rule described in part A of this opinion applies here. We therefore view appellant's evidence in the light most favorable to him.

2. *Evidence relative to the face mask.*

The mask worn by plaintiff at the time of his accident was a three-weapon mask (a mask which may be utilized for foil, epee or sabre fencing). The interior of a three-weapon mask has a bar extending vertically and medially from the top to bottom and two bars extending horizontally, one across the top and the other across the bottom of the mask. The interior of a sabre mask has no such protection inside of it other than the wire mesh which, of course, protects the face on the three-weapon mask as well.

The three-weapon mask worn by plaintiff complied with the specifications for international as well as lesser competitions in 1970 and 1971; the mask not only met, but exceeded the specifications in terms of strength and durability. The vast bulk of the masks manufactured in Europe contain reinforcing bars to give the mask added strength.

Two experts testified that based upon their independent examinations there was no defect in the wire mesh metal material forming the protective face of the mask. Both experts agreed that the wire mesh had been penetrated by an object with a sharp, cutting-type edge or tip. Daniel Dechaine, armorer for the United States Olympic Team of the 1976 Summer Olympic Games and inventor of machines utilized throughout the world by fencing organizations for testing purposes, also testified that it was inconceivable how a legal, standard weapon could have penetrated the mask. One of plaintiff's experts testified that the presence of reinforcing bars in plaintiff's mask in no way contributed to the sabre's penetration of the mask. Another expert further testified that a sabre with sharp corners, given the proper force and direction, could penetrate any standard fencing mask.

3. *Insufficiency of the evidence to support a verdict for design defect by manufacturer.*

■ A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 62). This rule applies as well to retailers (*Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256, 262 [37 Cal.Rptr. 896, 391 P.2d 168]).

■ In the instant case, no evidence whatsoever was presented suggesting any defect in the manufacture of the product mask. The unrebutted testimony of both experts called by plaintiff indicated that there was no defect in the wire mesh metal that was penetrated by Croddy's sharp sabre tip. The unrebutted testimony established that the accident mask not only met, but exceeded the specifications of the recognized standards for masks in terms of strength and durability. Therefore plaintiff's case was, and is, that the mask was improperly designed. It was plaintiff's burden to prove that plaintiff was injured while using the mask in a way *it was intended* to be used and as a result of a defect in design. (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, 64; *Erickson* v. *Sears, Roebuck & Co.,* 240 Cal.App.2d 793 [50

Cal.Rptr. 143].) In addition to the burden of proving a design defect, proper use and proximate cause, when a design defect is claimed *Baker* v. *Chrysler Corp.,* 55 Cal.App.3d 710, 716 [127 Cal.Rptr. 745], held that plaintiff must further bear the burden of proof in demonstrating the reasonableness of alternative designs.

This holding was recently modified by *Barker* v. *Lull Engineering Co.,* 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443]. But the decision of *Barker, supra,* does not assist appellant at bench. *Barker* reiterated the elements established in *Greenman, supra,* and reviewed in *Cronin* v. *J.B.E. Olson Corp.,* 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], necessary in a products liability case. The part of the *Barker* case significant here merely shifted to the defendant the burden of proof with respect to the "risk-benefit" standard applicable to alternative design. ■ The plaintiff's initial burden of establishing a prima facie case still includes proof (1) that the product was used in an *intended* or *reasonably foreseeable* manner, and (2) that the product *design proximately caused* the injury. (*Barker, supra,* 20 Cal.3d at p. 426.)

■ It is in failing to prove that the mask was used as intended or in a reasonably foreseeable manner and in failing to prove that the presence of the bar proximately caused the injury that appellant failed to establish a prima facie case. The evidence is clear that the mask was not intended to be used against a sharp, pointed, or defective blade. A defectively sharp blade pierced the mask. Appellant asserts that it is a known fact that blades sometimes break during a match and therefore the use of a defective blade is a foreseeable risk. We do not agree. The second part of appellant's syllogism does not necessarily follow the first. It would enlarge the degree of reasonable foreseeability from that of a known risk, the extent of which, in terms of percentage is not disclosed by the evidence, to include the risk of the "one in a million" chance. One of appellant's own experts opined that the incident here was one in a million. We recognize that in this regard the evidence did not disclose nor are we using the term in the sense of strict mathematical probabilities. From the surrounding testimony it is clear that the term "one in a million" was not intended to express an accurate mathematical probability but was used to express in nontechnical language the unreasonableness of expecting such an occurrence. It was a way of expressing the unlikelihood of this kind of accident if proper equipment is used.

Mere proof of possibility of injury is insufficient. A verdict cannot be permitted to be based upon guesswork or conjecture.

Plaintiff contends that the mask worn at the time of the accident was defective in that the center reinforcing bar made it easier for a sharp edged sabre to penetrate the wire mesh of the mask. The sole testimony cited in support of this theory was from expert Herbert Fairfield, who stated that in his opinion the bar acted as a die. However, he further testified that: (1) the wire mesh of the mask was penetrated by a sharp-edged or tipped sabre; (2) a sabre with sharp corners could penetrate any standard fencing mask; (3) the whole purpose of the subject mask's design was to have a round tipped and ended object slide off the mask; and (4) given a button or rounded tip sabre, the subject mask was comparable to other masks in perforation resistance. Moreover, there was no evidence that the die and punch effect would ever occur when proper blades were used.

■ There is no strict liability when the product is fit to be sold and reasonably safe for use but has inherent dangers that no human skill or knowledge has yet been able to eliminate (Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)* (1966) 50 Minn.L.Rev. 791, 812). Fencing is a form of combat, a dangerous sport. The fencing rules provide that fencers assume the risk of injury during a bout.[2]

■ Considering that a sabre with sharp corners can penetrate *any* standard fencing mask; that a sharp-edged sabre penetrated plaintiff's mask; and that the rules required a rounded tip on a sabre, it is clear that plaintiff's mask was subjected to a use for which it was not intended. Indeed, although masks have been penetrated by broken blades which have sharp edges unrebutted testimony indicated masks are not necessarily supposed to withstand penetration by a broken blade.

[2]We are aware of the recent statement by our Supreme Court in *Daly* v. *General Motors Corp.,* 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162] (decided after this case was tried and appealed), that in strict products liability cases a comparative fault system will be applied and that "In such cases the separate defense of 'assumption of risk,' to the extent that it is a form of *contributory negligence,* is abolished." (Italics added.) (*Daly, supra,* at p. 742.) We read this opinion as inapplicable to the matter at bench. (1) The rule is expressly prospective only; (2) the risk to which we refer is not a form of contributory negligence but is conduct indicating an awareness that the available physical protection reasonably to be expected is much less than that to be expected from some other product. This view conforms with the public policy and the avowed purpose of products liability law, ". . . to insure that the costs of injuries resulting from defective products are borne by the manufacturer that put such products on the market rather than by the injured persons who are powerless to protect themselves." (*Daly* v. *General Motors Corp., supra,* quoting *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 63.) It is difficult to perceive a person choosing to engage in the sport of sabre fencing as one powerless to protect himself.

Even assuming here a *reasonably foreseeable* use of the mask, because of the possibility of penetration by a broken blade as an example, nevertheless plaintiff has failed to present sufficient evidence of a design defect to go to the jury. No testimony was adduced by plaintiff that a fencing mask either exists or can be designed which will prevent penetration by a sharp-edged sabre. To the contrary the unrebutted testimony was that any mask can be penetrated by a sharp-edged sabre. Plaintiff failed to present any evidence that the state-of-the-art or existing technology is capable of perfecting a mask which cannot be penetrated by a sharp-edged sabre. ■ "Requiring an injured plaintiff who seeks damages against a manufacturer on the basis of strict liability in tort for a defective design to show that alternative designs for the product could reasonably have been developed does not enlarge plaintiff's burden of proof. An injured plaintiff has always had the burden to prove the existence of the defect. The reasonableness of alternative designs, where a design defect is claimed, is part of that burden. . . ." (*Baker* v. *Chrysler Corp., supra,* 55 Cal.App.3d 710, 716.)[3]

■ In the case at hand, no expert or anyone else opined that the accident was proximately caused by the presence of the center re-inforcing bar. The other possible cause of the accident, penetration by a sharp-edged blade, is applicable to any mask. However, this latter circumstance alone does not automatically render Vince liable for design defect simply because Vince manufactures fencing masks. Simply because fencing masks cannot be made absolutely safe against all risks does not make a manufacturer liable for placing them on the market. The dual test for design defect is not intended to make "the manufacturer an insurer for all injuries which may result from the use of its product." (*Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d at p. 432.)

It is at this critical point that it is important to distinguish between the evidence present and the evidence which is not present. It is possible that the presence of the reinforcing bar could have caused the penetration but that is speculation. There is no evidence that the accident and injury did in fact occur specifically because of the presence of the reinforcing bar. The mere presence of the reinforcing bar was the claimed but unproven design defect.

---

[3]As noted previously *Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413, did not alter the need for demonstrating the availability of reasonable alternate design, but simply shifted to defendant the burden of proving the unreasonableness of requiring an alternative in terms of such items as cost of producing the alternative product.

The testimony was unrebutted that the plaintiff's mask not only met, but exceeded established specifications. There was no opinion that the accident would not have occurred but for the center reinforcing bar. To the contrary, the same witness who characterized the safety bar as a potential hazard testified that given proper direction and force a sharp-edged sabre could penetrate any standard fencing mask. Also, there was unrebutted expert testimony that the penetration would have occurred even without the reinforcing bar.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 9, 1978.