[No. 2797–3. Division Three. May 15, 1979.]

ARTHELIA KIMBLE, *Appellant,* v. WASTE SYSTEMS INTERNATIONAL, INC., ET AL, *Respondents.*

*Velikanje, Moore & Shore* and *Warren L. Dewar, Jr.,* for appellant.

*Gavin, Robinson, Kendrick, Redman & Mays, William H. Mays,* and *Stephen Haskel,* for respondents.

ROE, J.—Moses Kimble was a laborer for the sanitation department in Yakima. His duties consisted of collecting and compacting refuse in a garbage truck known as the "Shu–Pak," manufactured by defendants Waste Systems, Inc., and Maxon Industries, Inc. The truck has two separate driving compartments: the left–side compartment is used to drive the vehicle along its intended route. The right compartment, adjacent to the left section and forward of the front wheels, is designed to allow the laborer, or "helper," easy egress to load the garbage.

On August 30, 1976, Kimble was in the right–hand driver's compartment operating the truck, which was going approximately 1 mile per hour. According to one witness, Kimble either slipped off or stepped out of the driver's compartment into the path of the moving vehicle. He was crushed to death beneath the right front wheel. His widow Arthelia Kimble brought a strict products liability action as personal representative of the estate of Moses Kimble and on behalf of herself and the surviving children. She sued defendants, manufacturers of the truck, alleging in the trial brief that the Shu–Pak was not reasonably safe for its intended use as a garbage truck in the following particulars:

1. There was no system to insure the application of brakes whenever the driver left the right–hand stand driving compartment;

2. The floor plating material of the right–hand stand driving unit was not consistent with the need for maximum friction material;

3. The step from the right–hand stand driving unit was of inadequate size and location and nonslip characteristics; and

4. There were no adequate warnings concerning the manner in which to safely use the truck.

It was not established at trial whether, while the truck was still in motion, Kimble had slipped off or stepped out of it. Although both Maxon and the sanitation department conducted sessions for drivers on the maintenance and safe operation of the Shu–Pak, there was conflicting evidence whether Kimble had ever attended these classes or been instructed on how safely to exit the truck from the right side. There was, however, a warning sign in the right–hand driver's compartment not to drive over 10 miles per hour when operating the truck from that side. Further, the Maintenance and Operators Manual for the Shu–Pak contains a diagram of both driving compartments and detailed instructions for "house to house pick up," including these directions:

> *When truck comes to a stop,* lock brake lever to complete DOWN position;

(italics ours) and (referring to a chain across the open right side unit):

> Hook up chain. This is provided for your safety. USE IT!

The trial court submitted special interrogatories to the jury, the first of which was:

> QUESTION No. 1: Was garbage truck G–3 reasonably safe as designed and when delivered by the defendants?

The jury answered this question "Yes," and therefore did not consider the additional issues of proximate cause, contributory negligence, or damages. Judgment for both defendants (comanufacturers) was entered on the verdict and plaintiff appealed.

The sole assignment of error is that the trial court erred in giving instruction No. 9:

> A manufacturer is required to give adequate warning of the manner in which a product should be used if the failure to warn of the foreseeable danger from its use makes that danger unreasonable under the circumstances.

As part of that assignment she urges that since the court gave instruction No. 4,

> A product is not reasonably safe when it is unsafe to an extent beyond that which would be reasonably contemplated by the ordinary user. In determining the reasonable expectations of the ordinary user, a number of factors may be considered. Among them are: the relative cost of the product, the gravity of the potential harm from the claimed defect, the cost and feasibility of eliminating or minimizing the risk, and you may take into account the intrinsic nature of the product.

it was error to refuse her proposed instruction No. 5, which provides:

> The words "not reasonably safe" as used in the previous instructions, refer not only to the condition of the product itself, but may include as well the failure to give an adequate warning concerning the manner in which to safely use the product. A product may be faultlessly manufactured and designed, yet still not be reasonably safe when placed in the hands of the ultimate user without first giving an adequate warning concerning the manner in which to safely use the product.

According to the plaintiff, instruction No. 9 is not a correct statement of the law, as foreseeability is not an element in a strict liability action; further, it placed on her the higher burden of proving that the truck was "unreasonably dangerous," rather than "not reasonably safe," a distinction allegedly made in *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975). Finally, plaintiff claims that the instruction, couched in terms of negligence, prevented her from arguing her strict liability theory of the case.

Restatement (Second) of Torts § 402A (1965), adopted by Washington in *Ulmer v. Ford,* 75 Wn.2d 522, 452 P.2d 729 (1969), was modified in *Seattle–First Nat'l Bank v. Tabert, supra,* to eliminate the dual requirements of proving that a product is both "defective" *and* "unreasonably dangerous." In delineating the scope of strict liability, the *Tabert* court used the following language on which plaintiff relies:

If a product is unreasonably dangerous, it is necessarily defective. The plaintiff may, but should not be required to prove defectiveness as a separate matter.

*Likewise, unreasonably dangerous implies a higher and different standard than what we conceive to be the intended thrust of section 402A strict liability.* The emphasis is upon the consumer's reasonable expectation of buying a product which is reasonably safe. The ordinary consumer evaluates a product in terms of safety, recognizing that virtually no product is or can be made absolutely safe. Certainly that is the case with the automobile and all of its potential for injury.

*Thus, we hold that liability is imposed under section 402A if a product is not reasonably safe.* This means that it must be unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer.

(Italics ours.) *Seattle–First Nat'l Bank v. Tabert, supra* at 154.

■ We do not read this language as does plaintiff. The court was not suggesting that "unreasonably dangerous" and "not reasonably safe" are different standards of proof for purposes of a strict liability action. Rather, the court was electing between a buyer–oriented standard, with the focus on consumer expectations of the product, and a standard which focuses on the conduct of the manufacturer.

If there is a requirement that the product be unreasonably dangerous, that concept necessitates definition. Comment *i* to section 402A dictates that it be dangerous to an extent beyond that which would be contemplated by the ordinary consumer. Emphasis is on consumer expectation. This test has been modified by the Oregon court and several federal courts. In *Phillips v. Kimwood Mach. Co., supra* [269 Ore. 485, 525 P.2d 1033 (1974)], the court, as indicated, adopted a "dangerously defective" standard. It defined the test at page 1036, as follows:

A dangerously defective article would be one which a reasonable person would not put into the stream of commerce *if he had knowledge of its harmful character.* The test, therefore, is whether the seller would be negligent if he sold the article *knowing of the risk*

*involved.* Strict liability imposes what amounts to constructive knowledge of the condition of the product.
. . .
The rationale is that this test is equivalent to the Restatement standard. The Oregon court said:
> That is to say, a manufacturer who would be negligent in marketing a given product, considering its risks, would necessarily be marketing a product which fell below the reasonable expectations of consumers who purchase it.

*Phillips v. Kimwood Mach. Co., supra* at 1037.

(Citations omitted.) *Seattle–First Nat'l Bank v. Tabert, supra* at 152–53.

It is in this context that the court used the language on which plaintiff relies. Deeming it to be the "intended thrust of section 402A," the *Tabert* court opted for a standard which focuses on the reasonable expectations of the consumer. "Unreasonably dangerous" was rejected *as interpreted by other jurisdictions* to establish a 402A standard more akin to negligence per se than strict liability. The term was not rejected as a synonym of "not reasonably safe." *See Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 553 P.2d 107 (1976). Plaintiff's contention that instruction No. 9 placed a higher burden of proof on her is therefore without merit.

Plaintiff is correct, however, that foreseeability of the dangers involved in the use of a product is not relevant to a strict liability theory. *See Galvan v. Prosser Packers, Inc.,* 83 Wn.2d 690, 521 P.2d 929 (1974); *Little v. PPG Indus., Inc.,* 19 Wn. App. 812, 579 P.2d 940 (1978).

■ A manufacturer's failure to provide adequate warnings concerning the use of a product can be a "defect" which makes the product unreasonably dangerous, allowing the imposition of strict liability. *Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 570 P.2d 438 (1977); *Haugen v. Minnesota Mining & Mfg. Co.,* 15 Wn. App. 379, 387, 550

P.2d 71 (1976).[1]

In *Little v. PPG Indus., Inc., supra,* the court discussed the role of foreseeability in a strict liability action and stated:

It is true as plaintiff contends that Restatement (Second) of Torts § 402A, comment *j* suggests that strict liability for failure to warn is based upon the manufacturer's knowledge or reasonable imputation of knowledge of the danger. But this suggestion is incongruous, since it shifts the emphasis away from the condition of the product (strict liability) and back to the reasonableness of the manufacturer's conduct (negligence). Aside from situations in which a danger is obvious or known to the user, strict liability (as distinct from negligence) for a manufacturer's failure to provide adequate warnings does not depend on the manufacturer's knowledge of the danger. Such knowledge is assumed, *Phillips v. Kimwood Mach. Co., supra,* and it is the failure to give the adequate warning that renders the product unreasonably dangerous.

(Footnote omitted.) *Little v. PPG Indus., supra* at 821–22.

■ Instruction No. 9 in this case, conditioning the manufacturer's duty to warn on the foreseeability of danger, stated the issue in negligence terms and was therefore inappropriate to plaintiff's strict liability theory. For the following reasons, however, we do not find reversible error.

■ The instructions, when read as a whole, presented ample opportunity for plaintiff to argue her theory. Instruction No. 3 outlined plaintiff's burden of proof for strict liability; instruction No. 4, defining "not reasonably safe," followed the language of *Seattle–First Nat'l Bank v. Tabert; supra.* Instruction No. 18, the special interrogatory, limited the jury's consideration of liability *solely* to the strict liability theory. Instructions on proximate cause and

---

[1]In such a case, the defect in the product is the inadequacy, or total absence, of the warnings. *Novak v. Piggly Wiggly Puget Sound Co.,* 22 Wn. App. 407, 412, 591 P.2d 791 (1979).

contributory negligence were also included, couched in strict liability terms.

 Plaintiff also had the benefit of instruction No. 11, which provided:

The fact that a danger may be obvious does not automatically mean that the injured user is contributorily negligent unless the user voluntarily and unreasonably encounters a known danger.

The fact alone that a worker's job requires him to expose himself to an obvious danger does not mean that the worker has voluntarily and unreasonably encountered such danger.

The law in Washington is that a manufacturer has no duty to warn if the product's dangerous features are obvious or known to the user, and where

the dangers associated with the use of a product cannot be said to be clearly latent, both the question of whether instructions or warnings are adequate to insure safe use of a product, as well as that of whether the dangers involved are so obvious or well known as to eliminate the necessity for detailed warnings, are for the trier of fact.

*Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 480, 573 P.2d 785 (1978).

Arguably, any instruction here on the defendant's duty to warn was unnecessary. If Moses Kimble slipped out of the truck, the lack of safety warnings would not be the proximate cause of the accident. However, Kimble may have stepped out of the truck while it was still in motion. The danger of alighting from a multi-ton moving vehicle is obvious. Any such use of the truck would be so clearly unreasonable as to obviate any duty to warn against it.[2]

[T]he fact that a danger is patent does not automatically free the manufacturer from liability, but does so only if the plaintiff voluntarily and *unreasonably* encounters it. Restatement (Second) of Torts § 402A, comment *n* at 356 (1965).

---

[2]As noted above, the truck did contain a warning concerning excess speed, and the Maintenance and Operators Manual instructed to apply the brake only after coming to a complete stop.

*Brown v. Quick Mix Co.,* 75 Wn.2d 833, 836, 454 P.2d 205 (1969). Although public policy favors holding liable those who produce products occasioning injury, strict liability is not absolute liability. A manufacturer is not an insurer, and need not warn against hazards known to everyone.

Obviously, a manufacturer should not have to warn consumers, for example, that a knife will cut a person or a hammer will inflict a nasty bump if improperly used.

*Little v. PPG Indus., Inc., supra* at 821 n.4. The jury found, after all the evidence was presented and the instructions given, that the truck was reasonably safe as designed and delivered. The error in giving instruction No. 9 was harmless, and we decline to order a new trial.

Judgment affirmed.

MUNSON and MCINTURFF, JJ., concur.

Reconsideration denied July 10, 1979.

Review denied by Supreme Court October 12, 1979.