[No. 7636–1–I. Division One. December 21, 1981.]

BARRY CONNOR, ET AL, *Appellants,* v. SKAGIT CORPORATION, ET AL, *Respondents.*

*Crane, Carroll, Boese, Dunham, Stamper & Daily* and *Douglas S. Dunham,* for appellants.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Philip*

*Talmadge,* and *Robert Piper,* for respondents.

CORBETT, J.—This is a products liability case brought by appellant Connor wherein he alleged that he was injured because of the defective design of logging equipment manufactured by the respondents, Skagit and Bendix. The trial resulted in a defense verdict. Connor contends that the trial court incorrectly instructed the jury.

Connor was employed by a logging company that used the equipment manufactured by Skagit and Bendix. The two pieces of equipment were a T–90 tower which consisted of a 90–foot–high metal pole with a pulley system, and a Skagit Bu–80 yarder containing the power source and drums upon which the cable wrapped as it went from the top of the tower to the logs to be pulled from the woods to the landing where the equipment is located.

At the time of the accident, the logs were down a steep embankment and off to one side of the equipment. The operator could not see the logs being pulled until they crested the embankment near the landing. He judged the distance of the logs from the landing by the amount of cable on the drum. This required him to look away from the direction of the logs. Upon hearing a signal from the woods, the operator engaged the drum, drawing in the cable which pulled the logs. Connor was employed as a "chaser." He had been talking to the operator until the signal from the woods was heard. He stepped outside the cab and was standing on an attached ladder when the log suddenly crested the hill and struck him. Connor argued at trial that the equipment was defectively designed and it lacked sufficient warnings.

The first assignment of error is the giving of instruction No. 12:

The plaintiff has the burden of proof on each of the following allegations claiming defective design on the part of the defendants:

First, that the yarder and tower manufactured by the defendants were designed in such a manner as to expose

persons working near the equipment to hazards or dangers which were greater than would be reasonably contemplated or recognized by persons working in the logging industry in western Washington and possessing the ordinary knowledge of persons so employed as to the characteristics of said equipment.

Second, that the alleged defective design was a proximate cause of injuries sustained by the plaintiff on September 13, 1974.

Third, that there was available to the defendants a feasible and practical alternate design which, more likely than not, would have prevented the accident which resulted in plaintiff's injuries.

If you find that the plaintiff has not sustained his burden of proof on any one or more of these propositions, your verdict must be for the defendants.

Connor argues that feasibility is a factor in determining whether a product is reasonably safe but it is not a part of the burden of proof. He cites *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975), where it was stated:

In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.

The Washington courts have on occasion elaborated on the role of feasibility of alternate design in the context of strict products liability. In *Novak v. Piggly Wiggly Puget Sound Co.,* 22 Wn. App. 407, 591 P.2d 791 (1979), the plaintiff bystander was struck in the eye with a BB which was shot from the defendant manufacturer's gun and which ricocheted off a hard surface. In upholding the trial court's summary judgment in favor of the defendant, the court stated:

Plaintiff suggests no specific ways in which Daisy could have done more than give such warnings in order to lessen the danger encountered by Monte and Andrew.

. . . The conceivable ways by which the manufacturer otherwise could have prevented this unfortunate accident are, to us, impracticable, if not absurd. Once a youngster obtained possession of a BB gun, it would be impossible for the manufacturer to prevent him from shooting at a target likely to produce a ricochet. . . . Therefore, we conclude that the BB gun, if accompanied by adequate warnings to the user of the dangers inherent in its use, was not shown by plaintiff to be designed in such a way as to be dangerous to an extent beyond that which would be contemplated by the ordinary adult consumer, and there is no valid justification for subjecting Daisy to liability on the theory that it failed to take some reasonable action to reduce the dangers of ricochet to child users or bystanders. The trial court correctly granted summary judgment on the issue of strict liability for a defective design.

*Id.* at 411–12.

In another case, the plaintiff stewardess fell through an open hatchway located in the floor of a DC–10 and into the galley area beneath the first–class cabin. The plaintiff's attorney submitted a memorandum in opposition to the motion for summary judgment and supported it with an affidavit of an engineer. The affiant compared the hatch cover design used in the DC–10 and the Boeing 747, and stated that:

The dangerous features of the DC–10 hatch cover are not present in the design of the Boeing 747 galley hatch cover. While quite similar in other respects, the Boeing 747 hatch cover is hinged to the floor and is equipped with a spring device which automatically closes and keeps the hatch cover closed when the hatch is not in use.

*Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 349, 588 P.2d 1346 (1979). Based on the agreed statement of facts, this and other affidavits in the record of the case, the trial court dismissed the action. In reversing the trial court, the Supreme Court stated that:

The issue of whether the galley escape hatch was not reasonably safe was also raised in the affidavit by the comparison of the DC–10 hatch cover and the Boeing 747

hatch cover. In *Tabert,* we noted that feasibility of minimizing risk is a factual consideration germane to the ultimate fact of whether a product is reasonably safe. *The comparison of the two hatches in the affidavit raises the inference that a reasonable alternative which poses less risk is feasible.*

(Italics ours.) *Id.* at 352.

■ From a close reading of the *Novak, Lamon* and *Tabert* cases, it is apparent that the feasibility of eliminating or minimizing the risk is a factor to be considered by the trier of fact in determining whether the product met the expectations of the ordinary consumer. The plaintiff in the present case introduced a plethora of evidence in an attempt to show that alternate designs, which were both feasible and practical, were available to the defendants. Thus, this was a case in which the cost and feasibility of eliminating or minimizing the risk was relevant. *Tabert,* at 154. In such a case, some of the same evidence tending to prove that the product was unsafe beyond the reasonable expectations of the ordinary consumer also necessarily tends to prove that feasible and practical alternate designs were available. Instruction No. 12 did not impose a burden upon plaintiff that he had not already assumed. Nor did the instruction enlarge plaintiff's burden of proof. *Garcia v. Joseph Vince Co.,* 84 Cal. App. 3d 868, 879, 148 Cal. Rptr. 843, 849 (1978). We believe it is consistent with *Tabert* to hold that the trial court did not err in instructing the jury that plaintiff had this burden of proof.

Connor next complains that the court failed to give his proposed supplemental instruction No. 3:

In determining the reasonable expectations of the "ordinary user" of a product, you may consider the following factors:

(1) The usefulness and the utility of the design;

(2) The likelihood, if any, that the design could cause injury, and if so, the probable seriousness of the injury;

(3) The availability of a substitute design which would meet the same need and which would lessen the likelihood, if any, of injury;

(4) The ability to eliminate any unsafe aspects of the design without impairing its usefulness, or making it too expensive or otherwise impairing its utility.

In determining this question, you should consider all of the evidence worthy of belief bearing upon any one or more of the factors. You should not single out any one factor to the exclusion of the others.

Connor objected to the court's instruction No. 13, which stated:

In determining the reasonable expectations of persons who will be using or working near the equipment, you may consider the following factors:

(a) The gravity of the potential harm from the claimed defect;

(b) The purpose and function of the equipment involved;

(c) The circumstances and conditions under which the equipment will normally be used;

(d) The number and experience of persons who will be using or working near the equipment when it is in operation;

(e) The manner in which plaintiff's injury occurred; and

(f) Any other factor or factors you believe reasonably bear on this issue.

Connor argues that the cost of eliminating or minimizing the risks, and the feasibility and practicality of eliminating or minimizing the risks, were critical factors in the determination of unsafe design and were omitted from the list of factors contained in the court's instruction No. 13, but could have been included by the giving of supplemental instruction No. 3.

▪ Connor argues further that it was practically impossible for the equipment here in issue to be more dangerous than would be reasonably contemplated or recognized by persons working in the logging industry in western Washington. That whenever the peril is open and obvious, then the design and safeness can never be greater than would be reasonably contemplated by the ordinary consumer. Therefore, the possible effect of the instruction in a patent peril

case is to disallow recovery. The plaintiff suggests that we adopt the 2–pronged test enunciated in *Barker v. Lull Eng'r Co.*, 20 Cal. 3d 413, 426–27, 573 P.2d 443, 143 Cal. Rptr. 225 (1978):

> In particular, in design defect cases, a court may properly instruct a jury that a product is defective in design if (1) the plaintiff proves that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) the plaintiff proves that the product's design proximately caused injury and the defendant fails to prove, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design.

(Italics omitted.) This is not the law in Washington. We have clearly and consistently maintained a test centered on the reasonable expectations of the ordinary consumer. It was stated in *Seattle–First Nat'l Bank v. Tabert, supra* at 154:

> Thus, we hold that liability is imposed . . . if a product is not reasonably safe. This means that it must be unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer.

*Accord, Lamon v. McDonnell Douglas Corp., supra* at 350–51.

■■■ Instruction No. 12 identifies the consumer as a person working in the logging industry with ordinary knowledge as to the characteristics of the equipment in issue. Instruction No. 13 is a list of factors for the jury to consider in determining whether the product was unreasonably dangerous. Read together, instructions Nos. 12 and 13 correctly and clearly state the law of this state. They are not misleading and they permitted the plaintiff to argue his theory of the case. It is discretionary with the trial court as to how many instructions are necessary to fairly present a litigant's theories, and the trial court also has considerable discretion as to how its instructions will be worded. *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 220–21, 562 P.2d 1276 (1977). When read as a whole, we find no error in the giving

of instructions Nos. 12 and 13, nor in the failure to give plaintiff's proposed supplemental instruction No. 3.

Connor next assigns error to the court's failure to give his proposed instruction No. 10, which would have better enunciated the factors to be considered by the jury in determining the reasonable expectations of the ordinary consumer. He did not except to failure to give this instruction and there being no objection, it was not preserved for the purpose of appeal. *Spangler v. Glover,* 50 Wn.2d 473, 481, 313 P.2d 354 (1957).

Connor next argues that the court erroneously refused to give any general duty instructions. Although he did propose two instructions which outlined the defendant's general duty, he did not make a specific exception to the failure to give them, and cites no authority for the proposition that such an instruction must be given. Therefore, they will not be considered by this court. *Spangler v. Glover, supra; Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 29, 593 P.2d 156 (1979).

Connor next assigns error to instruction No. 9 and the failure to give his proposed instructions Nos. 3 and 14, and supplemental instruction No. 3. Connor contends that 9 is illustrative of the 1-sided nature of the instructions favoring the defense.

Instruction No. 9 states:

When it is said that a party has the burden of proof on any proposition, or that any proposition must be proved by a "preponderance" or a "fair preponderance" of the evidence, or the expression "if you find" or "if you decide" is used, it means that you must be persuaded, considering all the evidence in the case, that the proposition on which he has the burden or [sic] proof is more probably true than not true.

The term "proximate cause" means a cause which in a direct sequence, unbroken by any new independent cause, produces the injury complained of and without which such injury would not have happened.

There may be more than one proximate cause of the same occurrence. However, if you find the sole proximate cause of the plaintiff's injury and damages was the act of

some other person who is not a party to this lawsuit, then your verdict should be for the defendants.

Although Connor initially made timely exception to 9, he later explicitly removed it when the court added the language that "[t]here may be more than one proximate cause of the same occurrence."

■ Connor's proposed instructions Nos. 3 and 14, and supplemental instruction No. 3 all address the issue of proximate cause covered in 9. Instruction No. 9 is a correct statement of the law. Any additional instructions on the issue would have been repetitive and cumulative. The court did not err.

> When the court has once covered the law of the case in plain and simple language, the charge to the jury should be ended, for further instructions in different language have more tendency to confuse than to enlighten.

*Stanhope v. Strang,* 140 Wash. 693, 697, 250 P. 351 (1926).

Connor next argues that not only were some of the instructions clearly erroneous, but they were also cast in the terms of a negligence case and taken as a whole, had a prejudicial skew to them.

In *Kimble v. Waste Sys. Int'l, Inc.,* 23 Wn. App. 331, 337, 595 P.2d 569 (1979), the court ruled on error assigned to instructions that were framed in negligence and given in a strict liability action. The court held that although a particular instruction "stated the issue in negligence terms and was therefore inappropriate to plaintiff's strict liability theory . . . [t]he instructions, when read as a whole, presented ample opportunity for plaintiff to argue her theory." The instructions here are not a model of clarity and exactness, but taken as a whole they do permit Connor to argue his theory of the case. Although Connor points to instruction No. 10 as being improperly couched in negligence terms, he failed to take exception to the instruction and therefore it becomes the law of the case. *Cerjance v. Kehres,* 26 Wn. App. 436, 441, 613 P.2d 192 (1980). This argument is therefore without merit.

It should be noted that the issue of negligence versus

strict liability of a manufacturer has probably been rendered moot by enactment of Laws of 1981, ch. 27, § 4, which provides in part:

(1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.

The legislature appears to have made an exception to strict liability for the determination of design defects, as opposed to manufacturing defects, with a return to negligence tests. *See* Colley & Beach, *Design Defects in Products Liability,* in *Uniform Products Liability Act* § 3.03 (V. Walkowiak ed. 1980).

Connor next assigns error to instruction No. 14, and to the failure to give his proposed instruction No. 11 and supplemental instruction No. 12.

Instruction No. 14 states:

The defendant has the burden of proof on each of the following claims of alleged fault on the part of the plaintiff.

First, that the plaintiff unreasonably, knowingly and voluntarily placed himself in a position where the risk of being struck by a log or part of the leadline or rigging was reasonably foreseeable by an ordinary prudent person experienced in the logging industry.

Second, that plaintiff so placing himself was a proximate cause of the injuries he sustained on September 13, 1974.

If you find the defendant has sustained its burden of proof on these claims, you must determine the degree, expressed as a percentage, to which plaintiff's fault contributed to his injuries. The court will furnish you a special verdict form for this purpose. Your answers to the questions in the Special Verdict Form will furnish the basis by which the court will reduce the amount of any damages you find to have been sustained by the plaintiff, by the percentage of such contributory fault on the part of the plaintiff.

■ The argument is that the instruction does not

explicitly inform the jury that the plaintiff must have actually known and appreciated the specific defect involved and that the ordinary and prudent person standard is not appropriate for strict liability. Although this argument is not without some merit, the error, if any, was harmless because the jury never reached the issue of assumption of the risk.

Two verdict forms were attached to the instructions. One was titled "Special Verdict Form" and the other titled "Verdict Form B." The Special Verdict Form directed the jury to answer a series of questions beginning with: "Was the equipment of the defendant involved in this case defectively designed?" The question was not answered and the verdict form never used. However, Verdict Form B, which states, "We, the jury find for the defendants," was used by the jury.

An erroneous instruction which is not prejudicial is harmless and will not justify a new trial. *Kennedy v. Clausing*, 74 Wn.2d 483, 491, 445 P.2d 637 (1968). Because the jury found for the defendants, the assumption of risk issue was never reached. Any error was therefore harmless.

Connor lastly assigns error to the trial court's failure to give his proposed instruction No. 6 and supplemental instruction No. 6, both of which outline a manufacturer's duty to warn.

In *Board of Regents v. Frederick & Nelson*, 90 Wn.2d 82, 86, 579 P.2d 346 (1978), the court stated:

It is basic that each party is entitled to instructions on its theories, but only if there is substantial evidence to support such theory.
The supporting facts for a theory and instruction must rise above speculation and conjecture.

(Citations omitted.)

Connor's expert witness, Dieter Jahns, testified that:

There are other areas, with regard to the layout of the tower relative to the cab, where there are certain blind spots in the area that should at least have cautionary notes. There should be a restructuring of the operator's

manual to point out what some of the difficulties of this type of logging operation are, how the equipment should be operated.

■■ The operator of the equipment at the time of the accident, in discussing the operator's manual, stated that:

Q You never asked Ron Hammer if he had an instruction manual, did you?
A No.
Q You didn't feel, as an operator, you needed it?
A No.

There is little else in the testimony with reference to warnings. The trial judge ruled on the plaintiff's proposed duty to warn instruction:

I have rejected the suggested instructions on duty to warn because I feel the evidence in this case supports it. I don't think there is any basis on which the jury could find *from this evidence that a failure to give a warning could be a proximate cause of Mr. Connor's injury.*

(Italics ours.) Where there are no reasonable differences of opinion as to the evidence, proximate cause is an issue of law for the trial court. *LaPlante v. State,* 85 Wn.2d 154, 159, 531 P.2d 299 (1975). The evidence as to proximate cause arising from the failure to give warnings was inadequate as a matter of law. Additionally, there is no duty on the part of a manufacturer to warn of obvious or known dangers associated with a product. *Haysom v. Coleman Lantern Co.,* 89 Wn.2d 474, 479, 573 P.2d 785, 93 A.L.R.3d 86 (1978). Here, as the plaintiff has described it, the danger was a patent peril, known to the plaintiff and operator of the equipment. The trial court did not err by failing to give the proposed instruction.

Affirmed.

ANDERSEN, J., concurs.

RINGOLD, A.C.J. (dissenting)—My difference with the majority is narrow but deals with a fundamental issue. I therefore dissent. The majority concludes that instruction

No. 12 correctly set out Connor's burden of proof as to defective design. In my view the instruction imposed upon Connor, contrary to Washington law, an additional burden of persuasion.

Proof of an alternate design is not a prerequisite to recovery in a strict products liability action, although the feasibility of minimizing or eliminating the risk is a factor bearing on the issue of consumer expectations. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975). In Washington a manufacturer is liable for injuries caused by a product which is "unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer." *Tabert,* at 154. Proof of an alternate design is but one way of showing that a product is not reasonably safe. Instruction No. 13 set out a list of factors for the jury's consideration, including working conditions, the gravity of the potential harm, the function of the product, and the manner in which the injury occurred. The court in *Tabert* listed the relative cost of the product as an additional factor, and purposely left the list open–ended to accommodate other factors which could become relevant. As a general proposition, while proof of an alternate design may be sufficient to prove that a product is not reasonably safe, such proof is not essential to recovery. One can readily conceive of a product design so unsafe and so lacking in utility that its manufacturer would be deemed liable even without a showing as the court required in instruction No. 12 "that there was . . . a feasible and practical alternate design which, more likely than not, would have prevented the accident which resulted in plaintiff's injuries."

The majority concludes, however, that it was not error here to require plaintiff to prove the existence of an alternate design, because the plaintiff "assumed" this burden by introducing "a plethora" of evidence tending to show the existence of an alternate design. It is unclear to me just how Connor can increase his burden of proof—the burden of persuasion—merely by going forward with evidence, plethora or not. While proof of an alternate, safer design

would certainly help establish liability, the plaintiff should not be precluded from proving liability using only the other factors set forth above.

The majority asserts that requiring Connor to prove the existence of an alternate design did not enlarge his burden of proof, citing *Garcia v. Joseph Vince Co.,* 84 Cal App. 3d 868, 148 Cal. Rptr. 843 (1978). This California case upon which the majority builds its argument is a slim reed indeed. Although under California law the reasonableness of alternative designs is part of the plaintiff's burden of proof, *Baker v. Chrysler Corp.,* 55 Cal. App. 3d 710, 127 Cal. Rptr. 745 (1976), Washington has rejected the California approach to strict products liability. The court in *Tabert* analyzed the language of Restatement (Second) of Torts § 402A (1965), which predicates liability on a finding that a product is "in a defective condition unreasonably dangerous to the user or consumer". Noting that California had rejected the "unreasonably dangerous" requirement, in favor of "defective condition", the court in *Tabert* went in the opposite direction: "If a product is unreasonably dangerous, it is necessarily defective. The plaintiff may, but should not be required to prove defectiveness as a separate matter." *Tabert,* at 154.

The court in *Tabert* adopted a test based on consumer expectations, listing "the cost and feasibility of eliminating or minimizing the risk" as but one factor which "may be relevant" to a determination of consumer expectations. *Id.* To require a plaintiff in Washington to prove the existence of a feasible design alternative is to enlarge the burden of proof.

In summary, the jury was required to read instruction No. 9, defining the burden of proof pursuant to WPI 21.01, with instruction No. 12, *i.e.,* the jury was required to find that it was "more probably true than not true" (instruction No. 12) "that there was available to the defendants a feasible and practical alternate design which, more likely than not, would have prevented the accident which resulted in plaintiff's injuries." Instruction No. 12. The instructions,

read together, enlarged the plaintiff's burden of proof. To paraphrase *Tabert,* a plaintiff may, but should not be required to prove a feasible and practical alternative design. Instruction No. 12 was, therefore, erroneous.

Nor may this error be characterized as harmless. We have no way of divining the specific reasons underlying the jury's verdict for the defendant. If the jury concluded that Connor met the burden of proof except for his failure to prove the existence of a design alternative as required by the erroneous instruction, then the error was prejudicial.

For the foregoing reasons, I would reverse and remand for a new trial.

Reconsideration denied February 5, 1982.

Review granted by Supreme Court April 23, 1982.